## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

ROBERT YOUNG                                    CIVIL ACTION

VERSUS                                          23-681-SDD-RLB

JAMES LEBLANC, SECRETARY OF
DEPARTMENT OF PUBLIC SAFETY
AND CORRECTIONS; SETH SMITH,
CHIEF OF OPERATIONS,
DEPARTMENT OF PUBLIC SAFETY
AND CORRECTIONS; SHERIFF TONY
MANCUSO, SHERIFF OF CALCASIEU
PARISH; SHERIFF TONEY EDWARDS,
SHERIFF OF CATAHOULA PARISH;
WARDEN ERIC STOTT; FORMER
WARDEN PAT BOOK; CPSO SGT.
BEASON; CPSO SGT. PRINCE; CPSO
SGT. GUTHRIE; CPSO DEP.
SANCHEZ; CPSO DEP. MARGIE
PRICE; AND UNKNOWN CPSO DEPS.
JANE AND JOHN DOES

### RULING

This matter is before the Court on the *Motion to Dismiss Pursuant to Rule 12(b)(1) & (6)*[1] filed by Defendants, James LeBlanc ("LeBlanc") and Seth Smith ("Smith") (collectively, "DPSC Defendants"). Plaintiff, Robert Young ("Plaintiff"), filed an *Opposition*,[2] to which Defendants filed a *Reply*.[3] For the reasons that follow, DPSC Defendants' motion will be denied.

---

[1] Rec. Doc. 30.
[2] Rec. Doc. 32.
[3] Rec. Doc. 34.

## I.    BACKGROUND

At the time of the events giving rise to this lawsuit, Plaintiff was detained pretrial at Catahoula Correctional Center ("CCC") after being arrested on non-violent charges.[4] Plaintiff alleges that on August 8, 2022, he was stabbed in the back five times by two "DPSC inmates" (i.e., convicted prisoners).[5] The attackers also allegedly poured scalding hot liquid on Plaintiff's face, resulting in burns and an eye injury.[6] After escaping these attackers, Plaintiff attempted to signal guards for help, but he alleges that CCC staff was either unavailable or unwilling to assist.[7] After escaping a second attack attempted by two other inmates, an officer came and removed Plaintiff from the dorm after Plaintiff signaled for help again.[8] Plaintiff was transported to the hospital to receive treatment for his stab wounds and burns.[9]

Among other allegations, Plaintiff alleges that as a pretrial inmate, he should not have been housed on the same unit with inmates with different legal status (i.e., convicted) such as his attackers.[10] Plaintiff states that the dorm to which he was assigned at CCC "housed a mixture of pretrial detainees and convicted DPSC prisoners."[11] According to the *Amended Complaint*, in 1996, the Louisiana Department of Public Safety and Corrections ("DPSC") partnered with Louisiana sheriffs to hold convicted prisoners in

---

[4] Rec. Doc. 5, ¶¶ 18, 19.
[5] *Id.* at ¶ 59. In the *Amended Complaint*, Plaintiff uses the terms "DPSC individuals/inmates" and "non-DPSC individuals." The Court assumes that these terms are meant to distinguish between post-conviction prisoners on the one hand, and pretrial detainees on the other. For the sake of clarity, the Court will use more familiar terms such as "convicted prisoners" (i.e., those who by virtue of their conviction are in the custody of the DPSC), and "pretrial detainees" (such as the Plaintiff).
[6] *Id.*
[7] *Id.* at ¶ 60.
[8] *Id.* at ¶ 61.
[9] *Id.* at ¶ 62.
[10] *Id.* at ¶ 19.
[11] *Id.* at ¶ 54.

facilities owned and operated by sheriffs and private entities.[12] This partnership was intended to resolve capacity limitations in prisons operated by the state.[13] The non-DPSC local facilities (such as CCC) are to operate in accordance with the Basic Jail Guidelines (the "Guidelines") developed by DPSC and the Louisiana Sheriff's Association.[14] The Guidelines aim to ensure that this "out-camp" system of housing inmates does not jeopardize the fundamental rights of DPSC prisoners housed in non-DPSC facilities.[15]

Movants, LeBlanc and Smith, are DPSC personnel. LeBlanc is the Secretary of DPSC, and Smith is Chief of Operations.[16] According to Plaintiff, DPSC entered into a contract with co-Defendant Toney Edwards, sheriff of Catahoula Parish, to house convicted prisoners in Catahoula Parish correctional facilities including CCC.[17]

Plaintiff was sent to CCC for pretrial detention after being arrested in 2022.[18] In general, Plaintiff alleges that DPSC Defendants have allowed dangerous conditions of confinement to persist at CCC despite their awareness of problems with the facility.[19] Plaintiff contends this has resulted in violence, including the attack Plaintiff suffered.[20]

More specifically, Plaintiff primarily asserts that his attackers were "violent DPSC inmates with whom he should not have been housed because of their different legal status."[21] Plaintiff's claims against DPSC Defendants are based on LeBlanc and Smith's roles with respect to the safe operation of local facilities such as CCC. According to the

---

[12] *Id.* at ¶ 13.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.* at ¶¶ 5, 6.
[17] *Id.* at ¶ 16.
[18] *Id.* at ¶ 18.
[19] *Id.* at ¶ 1.
[20] *Id.*
[21] *Id.* at ¶ 19.

*Amended Complaint*, LeBlanc at all pertinent times "was Secretary of DPSC, and, as such, was responsible for making, altering, amending, and promulgating rules and regulations necessary for the administration of the functions of DPSC, as well as for organizing, planning, supervising, directing, administering, and executing programs vested in DPSC."[22] Plaintiff also states that "LeBlanc is a signatory to the Basic Jail Guidelines (the 'Guidelines')—which purport to mandate minimum conditions of confinement at non-DPSC facilities housing DPSC inmates—and is responsible for oversight, review, revision, and promulgation of the Guidelines."[23]

Plaintiff alleges that Smith, appointed by LeBlanc as Chief of Operations for DPSC, shares LeBlanc's involvement with making rules and regulations necessary for DPSC functions and for organizing and directing programs vested in DPSC.[24] Plaintiff states that Smith is additionally responsible for the following: "actions of DPSC and its staff relating to incident management, state and local operations, internal affairs / crisis management, offender assignment and transfers, employee training, pre-classification and records, audits, sheriffs' billing, and the Guidelines, *inter alia*"; "ensuring appropriate policies and procedures are in place to comply with the provisions of the Guidelines"; "monitoring the Guidelines process of local facilities"; and "overseeing audits of those facilities."[25]

Plaintiff's claims against Smith and LeBlanc are largely based on allegations of their failure to enforce relevant provisions of the Guidelines despite their awareness of unconstitutional conditions at CCC.[26] Plaintiffs state that the Guidelines represent a

---

[22] *Id.* at ¶ 5.
[23] *Id.*
[24] *Id.* at ¶ 6.
[25] *Id.*
[26] *Id.* at *passim*.

consensus of professional opinion and are considered the minimum conditions necessary to ensure the safe operation of a jail facility.[27] The Guidelines cover aspects of facilities including classification of inmates for housing assignments, staffing requirements, and record keeping requirements for prisoners transferred to such a facility, which include information about classification and prior misconduct.[28]

Plaintiff alleges that "LeBlanc has pledged that if local facilities are not complying with the Guidelines, his practice is to send someone 'to sit down with the sheriff and his warden to talk about how we're going to fix [the facility]. So it's one of those deals where we try to help them get where they need to be.'"[29] Plaintiff further alleges that the Guidelines require non-DPSC facilities such as CCC to submit monthly reports of activities to Smith as Chief of Operations.[30] The monthly reports give information on matters such as unusual occurrences, altercations, and injuries requiring transport to hospitals.[31] Plaintiff further alleges that Smith regularly met and communicated with LeBlanc such that information on problems at CCC available to Smith was also available to LeBlanc.[32]

Plaintiff alleges that "CCC had no proper classification plan and inmates were assigned to housing units based on available beds without regard to custodial status, disciplinary history, known enemies, or any other consideration included in classification plans."[33] Plaintiff asserts this is in direct violation of Guideline II-A-012, which according to Plaintiff "requires a classification system that includes a written policy and procedure

---

[27] *Id.* at ¶ 14.
[28] *Id.* at ¶¶ 20–23.
[29] *Id.* at ¶ 14.
[30] *Id.* at ¶ 31.
[31] *Id.*
[32] *Id.* at ¶¶ 32, 43.
[33] *Id.* at ¶ 26.

for a classification plan. Housing assignments are to consider age, gender, legal status, custody needs, special problems and needs, and behaviors."[34] Plaintiff alleges that the inadequate classification plan, along with other issues such as inadequate supervision, lack of staff, and failure to investigate, resulted in excessive violence at CCC, including the violence suffered by Plaintiff.[35]

The focus of Plaintiff's case against DPSC Defendants is the alleged intermingling of inmates with different custodial status at CCC. Plaintiff asserts that the monthly reports of activities to Smith show that Smith and LeBlanc knew that pretrial detainees and post-conviction prisoners were housed together at CCC, "and were aware that conditions of confinement and the practice of failing to classify prisoners, failing to supervise them, and failing to control contraband resulted in violence, and they were further aware that deaths, serious injuries, and hospital routes were regularly occurring because of the level of violence at CCC."[36] Plaintiff lists several reported instances of violence between inmates at CCC occurring between 2018 and 2022.[37] Plaintiff alleges that CCC reported thirty-seven assaults in 2022, the year that Plaintiff was attacked.[38] Moreover, according to Plaintiff, "the true magnitude of this risk is underrepresented as Catahoula does not report all incidents and it does not consistently report the number of people involved in assaults."[39]

Despite these alleged problems, Plaintiff states that "Smith and LeBlanc have willfully turned a blind eye and refused to direct audits that would meaningfully examine

---

[34] *Id.* at ¶ 21.
[35] *Id.* at ¶¶ 1, 27.
[36] *Id.* at ¶ 33.
[37] *Id.* at ¶ 27
[38] *Id.* at ¶ 35.
[39] *Id.* at ¶ 36.

non-DPSC facilities' implementation of the Guidelines."[40] Plaintiff also points out that LeBlanc and Smith elected to continue in its contract with Sheriff Edwards to house convicted prisoners at CCC "despite the dangerous conditions at the facility. Defendant LeBlanc has authority to determine whether to house DPSC prisoners at local facilities based on the facilities' adherence to the Guidelines."[41]

Plaintiff alleges that LeBlanc intended to, and was responsible for, ensuring local jails complied with the Guidelines[42] and further that:

> The reports of assaults and deaths, the clear presence of weapons and other contraband, and the clear lack of a classification system at CCC resulted in a pattern of injuries that put Smith and LeBlanc on notice of the dangerous and unconstitutional conditions at CCC. On information and belief, the Guidelines Quarterly Summary Reports from CCC showed that DPSC and non-DPSC prisoners were in contact with each other and that violence was resulting from that contact. However, LeBlanc failed to take action to address this blatant problem.[43]

Plaintiff explains that "[n]on-DPSC facilities, including CCC, are required to submit statements of compliance with the Guidelines annually, which must include proposed expansions, available rehabilitative programs, and a summary of reentry initiatives."[44] However, "[t]he only external validation or evidence that must accompany these statements of compliance are Fire Marshal and Health Inspection reports."[45] It is alleged that "neither Smith nor LeBlanc took steps to look beyond self-serving reports from CCC

---

[40] *Id.* at ¶ 39.
[41] *Id.* at ¶ 41.
[42] *Id.* at ¶ 45.
[43] *Id.* at ¶ 47.
[44] *Id.* at ¶ 37.
[45] *Id.*

regarding compliance with the Guidelines and the adequacy of the conditions of confinement at CCC."[46]

Plaintiff then points to other local jails in Madison, Ouachita, Franklin, and Tensas that "all reported at least five serious altercations and assaults" involving pretrial detainees housed with convicted prisoners in 2019.[47] Additionally, Plaintiff states that a Concordia Parish facility reported a fatal altercation in 2020 between a convicted prisoner and a pretrial detainee who were housed on the same unit.[48] Despite these incidents, "annual compliance reports for these facilities found them in compliance with the Guidelines, including for classification and offender management systems."[49]

Accordingly, the overarching premise behind Plaintiffs allegations against DPSC Defendants is that they "inadequately monitor, audit, review, and supervise local jail facilities, including CCC, thereby failing to ensure that prisoners were not subjected to unconstitutional conditions and / or unreasonable risks of harm."[50] Despite Smith's and LeBlanc's knowledge of dangerous conditions at CCC, they allegedly failed to take any corrective action.[51] Plaintiff asserts this was one of the reasons he suffered his attack.

Plaintiff enumerates five claims in the *Amended Complaint*, but only the first two counts are lodged against the DPSC Defendants. Count One is brought against both Smith and LeBlanc in their individual capacities under 42 U.S.C. § 1983, alleging violations of Plaintiff's rights under the Fourteenth Amendment and, "to the extent applicable," violations of the Eighth Amendment.[52] Count Two is also a § 1983 claim

---

[46] *Id.* at ¶ 48.
[47] *Id.* at ¶ 49.
[48] *Id.*
[49] *Id.*
[50] *Id.* at ¶ 51.
[51] *Id.* at ¶ 47.
[52] *Id.* at ¶¶ 64–68.

alleging Fourteenth and, "to the extent applicable," Eighth Amendment violations, but is brought against LeBlanc in both his individual and official capacities, and against Smith only in his individual capacity.[53]

LeBlanc and Smith filed the instant motion seeking dismissal of Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II.   LAW AND ANALYSIS

### A.  Rule 12(b)(1) Law and Analysis

#### 1.  Legal Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to challenge the subject matter jurisdiction of the district court to hear a case. The party asserting that the court has jurisdiction bears the burden of proving that the court may adjudicate the case.[54]

A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6).[55] Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint is subject to dismissal if a plaintiff fails "to state a claim upon which relief can be granted." However, when ruling on a Rule 12(b)(1) motion, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments."[56] In reviewing a motion under Rule 12(b)(1), a court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by

---

[53] *Id.* at ¶¶ 69–84.
[54] *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001).
[55] *Benton v. U.S.,* 960 F.2d 19, 21 (5th Cir. 1992).
[56] *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (quoting *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte,* 536 F.3d 439, 449 (5th Cir.2008)).

undisputed facts plus the court's resolution of disputed facts.[57] "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."[58]

### 2. Analysis

DPSC Defendants argue that "Plaintiff's claims for monetary damages under § 1983 and any other relief against LeBlanc or Smith, in their official capacities," are barred by the immunity recognized in the Eleventh Amendment.[59] LeBlanc and Smith maintain that the Eleventh Amendment makes non-consenting states immune from lawsuits for money damages or equitable relief in federal courts by citizens of its own states, requiring dismissal of the claims against them in their official capacities.[60] Further, DPSC Defendants argue the State (and officials acting in their official capacity) are not "persons" under § 1983.[61] As a result, DPSC Defendants contend that any claims against LeBlanc or Smith in their official capacities are barred by the Eleventh Amendment.[62]

In response, Plaintiff first points out that LeBlanc is the only DPSC Defendant being sued in his official capacity.[63] Second, Plaintiff states that his official-capacity claims against LeBlanc only seek declaratory and injunctive relief, which is not barred by the Eleventh Amendment.[64] Plaintiff specifies that he is seeking prospective injunctive relief

---

[57] *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).
[58] *Ramming*, 281 F.3d at 161 (5th Cir. 2001) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).
[59] Rec. Doc. 30-1, pp. 4–5.
[60] *Id.*
[61] *Id.*
[62] *Id.*
[63] Rec. Doc. 32, p. 11.
[64] *Id.*

to enjoin continued violations of the Constitution, and this relief is not prevented by the Eleventh Amendment.[65]

As the Supreme Court explains, "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."[66] Additionally, "[t]he Supreme Court has 'held that a State is not a "person" against whom a § 1983 claim for money damages might be asserted.'"[67] Furthermore, it is clear that this rule applies to "arms of the state," and to a state's "officials acting in their official capacities."[68]

The Supreme Court recognized an exception to Eleventh Amendment immunity in *Ex Parte Young*.[69] In that case, the Court "held that enforcement of an unconstitutional law is not an official act because a state can not confer authority on its officers to violate the Constitution or federal law."[70] In another case, the Supreme Court further clarified that "[a]n allegation of an ongoing violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction."[71] Accordingly, "[t]o meet the *Ex Parte Young* exception, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect."[72]

---

[65] *Id.*

[66] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citations omitted).

[67] *Med RX/Sys., P.L.L.C. v. Texas Dep't of State Health Servs.*, 633 F. App'x 607, 610 (5th Cir. 2016) (quoting *Lapides v. Bd. of Regents,* 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66 (1989))).

[68] *Id.* (internal citations omitted).

[69] 209 U.S. 123 (1908).

[70] *Aguilar v. Texas Dep't of Crim. Just.*, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing *American Bank & Trust Co. of Opelousas v. Dent,* 982 F.2d 917, 920–21 (5th Cir.1993)).

[71] *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997).

[72] *Aguilar*, 160 F.3d at 1054 (citing *Saltz v. Tenn. Dep't of Emp. Sec.*, 976 F.2d 966, 968 (5th Cir. 1992)).

The only claim implicated by the Rule 12(b)(1) motion is the claim in Count Two against LeBlanc in his official capacity;[73] all other claims against the DPSC Defendants are individual-capacity claims. DPSC is considered an "arm of the state" entitled to Eleventh Amendment immunity.[74] Thus, claims against LeBlanc in his official capacity are barred unless the *Ex Parte Young* exception is met; in other words, Plaintiff is only able to seek prospective declaratory or injunctive relief against LeBlanc in his official capacity for violations of the Constitution or other federal law.

The *Amended Complaint* does not specify the precise relief sought against LeBlanc in his official capacity under Count Two. The *Amended Complaint* as a whole requests, *inter alia*, declaratory relief, injunctive relief, and monetary damages "as allowed by law."[75] Plaintiff clarifies in his opposition brief that he does not seek monetary relief from LeBlanc in his official capacity.[76] In light of this concession, DPSC Defendants' Rule 12(b)(1) motion as to monetary relief sought against LeBlanc in his official capacity is denied as moot. Otherwise, pursuant to *Ex Parte Young*, DPSC Defendants' Rule 12(b)(1) motion is denied as a matter of law as to prospective declaratory and/or injunctive relief sought under § 1983 against LeBlanc in his official capacity.

## B. Rule 12(b)(6) Law and Analysis

### 1. Legal Standard

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[77] The Court

---

[73] Rec. Doc. 5, ¶¶ 69–84.
[74] *See Hanna v. LeBlanc*, 716 F. App'x 265, 268 (5th Cir. 2017).
[75] Rec. Doc. 5, Sec. VI.
[76] Rec. Doc. 32, p. 11.
[77] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).

may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[78] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[79]

In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss: "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[80] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[81] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[82] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[83] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[84] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[85]

---

[78] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal citations omitted).
[79] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)).
[80] *Twombly*, 550 U.S. at 555 (2007) (internal citations and brackets omitted).
[81] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).
[82] *Id*.
[83] *Id*.
[84] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099, at *2 (S.D. Tex. 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[85] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### 2.  Analysis

#### a.  Actions under 42 U.S.C. § 1983

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'"[86] In order to state a claim under 42 U.S.C. § 1983, the plaintiff must establish two elements: "(1) that the conduct in question deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States; and (2) that the conduct complained of was committed by a person acting under color of state law."[87] As for the first element, 42 U.S.C. § 1983 only imposes liability for violations of rights protected by the United States Constitution – not for violations of duties of care arising out of tort law.[88] As to the second element, a "plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged."[89]

"The performance of official duties creates two potential liabilities, individual-capacity liability for the person and official-capacity liability for the municipality."[90] Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.[91] To be liable in one's official capacity under Section 1983, the defendant must have been delegated policy-making authority under state law.[92] A

---

[86] *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).
[87] *Jones v. St. Tammany Parish Jail*, 4 F.Supp.2d 606, 610 (E.D. La. 1998); *Elphage v. Gautreaux*, 969 F.Supp.2d 493, 500 (M.D. La. 2013).
[88] *Griffith v. Johnston*, 899 F.2d 1427, 1436 (5th Cir. 1990).
[89] *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).
[90] *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 484 (5th Cir. 2000).
[91] *Id.*
[92] *Id.*

state actor may have Section 1983 liability in his individual capacity for actions causing the deprivation of a federal right taken under color of state law.[93]

Smith has been sued only in his individual capacity, while LeBlanc has been sued in both his individual and official capacities. There is no dispute that Smith and LeBlanc were acting under color of law in their alleged conduct. Further, Plaintiff alleges that LeBlanc is a "final policy maker,"[94] and DPSC Defendants make no argument that LeBlanc lacks policy-making authority. Thus, the remaining consideration is whether Plaintiff has satisfied the first requirement to state a claim under Section 1983, namely to state a claim of a constitutional violation.

### b.  Qualified Immunity

Before analyzing Plaintiff's Constitutional claims, the Court addresses DPSC Defendants' assertion of qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[95] DPSC Defendants make minimal effort to actually apply this standard, arguing generally that Plaintiff did not allege Smith or LeBlanc had day-to-day involvement with CCC and that none of the allegations could constitute deliberate indifference.[96]

Plaintiff correctly notes that qualified immunity does not extend to claims for declaratory and injunctive relief.[97] Additionally, the Court notes that "[t]he defense of

---

[93] *Coleman v. East Baton Rouge Sheriff's Office*, 2014 WL 5465816, at *3 (M.D. La. Oct. 28, 2014).
[94] Rec. Doc. 5, ¶ 5.
[95] *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).
[96] Rec. Doc. 30-1, pp. 6–7.
[97] *See, e.g., Chrissy F. by Medley v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991).

qualified immunity applies only to suits against defendants in their individual capacities."[98] Thus, the qualified immunity defense is rejected to the extent Plaintiff seeks declaratory or injunctive relief, and the defense is only applicable to the individual-capacity claims.

Turning to the qualified immunity requirements, Plaintiff argues DPSC Defendants violated clearly established law because, despite their knowledge of CCC's noncompliance with the Guidelines, and specifically that CCC lacked an adequate inmate classification system, Smith and LeBlanc failed to take corrective action.[99] The Court finds that Plaintiff's claims, as alleged, overcome the qualified immunity defense. The Fifth Circuit has pronounced that "[t]he confinement of pretrial detainees indiscriminately with convicted persons is unconstitutional unless such practice is reasonably related to the institution's interest in maintaining jail security ... or physical facilities do not permit their separation."[100] This is the constitutional right that Plaintiff alleges has been violated, and it was clearly established at the time of Plaintiff's assault. Accordingly, the motion is denied with respect to qualified immunity.

Having established that DPSC Defendants are not entitled to qualified immunity, the Court turns to an analysis of Plaintiff's claims under the applicable provisions of the Constitution.

### c.  Applicability of Eighth and Fourteenth Amendments

Plaintiff brings claims under both the Fourteenth and Eighth Amendments for constitutional violations which allegedly occurred while he was a pretrial detainee. The Fifth Circuit explains that "[p]retrial detainees and convicted prisoners [ ] look to different

---

[98] *Walker v. Howard*, 517 F. App'x 236, 237 (5th Cir. 2013).
[99] Rec. Doc. 32, p. 20.
[100] *Jones v. Dallas Cnty.,* No. 21-10617, 2022 WL 3334493, at *3 (5th Cir. Aug. 12, 2022) (quoting *Jones v. Diamond*, 636 F.2d at 1374).

constitutional provisions for their respective rights to basic needs such as medical care and safety."[101] Convicted prisoners rely on the Eighth Amendment.[102] "The constitutional rights of a pretrial detainee, on the other hand, flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment."[103] The primary distinction is that "the State *does* punish convicted prisoners, but *cannot* punish pretrial detainees."[104] Thus, "a pretrial detainee's due process rights are said to be 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'"[105]

Plaintiff specifically asserts his Eighth Amendment right to be free from cruel and unusual punishment in Count Two.[106] However, "[t]he protections of the Eighth Amendment against cruel and unusual punishment are limited in scope to convicted prisoners and do not apply to pretrial detainees."[107] Instead, Plaintiff's right to be free from cruel and unusual punishment is encompassed under the Fourteenth Amendment because "[t]he Due Process Clause proscribes any punishment of pretrial detainees, cruel and unusual or otherwise."[108]

Accordingly, Plaintiff's claims will be evaluated under the applicable Fourteenth Amendment standards, and any Eighth Amendment claims are hereby dismissed as a matter of law.

---

[101] *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 639 (5th Cir. 1996).
[102] *Id.*
[103] *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).
[104] *Id.*
[105] *Id.* (quoting *City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244 (1983)).
[106] Rec. Doc. 5, ¶ 69.
[107] *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996).
[108] *Hare*, 74 F.3d at 650.

### d.  Episodic Acts/Omissions vs. Conditions of Confinement

In evaluating constitutional claims by pretrial detainees, courts in the Fifth Circuit distinguish between challenges to general conditions, practices, rules, or restrictions of confinement and challenges to episodic acts or omissions by jail officials.[109] Plaintiffs may plead both theories in the alternative.[110] Here, Plaintiff indicates that he seeks to recover against DPSC Defendants under both theories.

A conditions-of-confinement claim "is a constitutional attack on general conditions, practices, rules, or restrictions of pretrial confinement."[111] In such cases, the harm is caused by the condition itself.[112] "A condition of confinement is 'usually the manifestation of an explicit policy or restriction,' although a condition may also reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [officials], to prove an intended condition or practice.'"[113]

In a conditions-of-confinement claim, the "reasonable relationship test of *Bell v. Wolfish* is apposite."[114] According to that test, "a constitutional violation exists only if we [ ] find that the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective."[115] According to the Fifth Circuit, "[a] showing of express intent to punish is not required. Instead, such intent may be presumed where a policy is otherwise senseless."[116] As the court framed this notion in another case:

---

[109] *Hare*, 74 F.3d at 643.

[110] *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 n.1 (5th Cir. 2009).

[111] *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997) (quoting *Hare*, 74 F.3d at 644).

[112] *Watts v. Pourciau*, No. CV 20-196-SDD-RLB, 2020 WL 7344613, at *2 (M.D. La. Nov. 16, 2020).

[113] *Zavala v. City of Baton Rouge/Par. of E. Baton Rouge*, No. CV 17-656-JWD-EWD, 2018 WL 4517461, at *9 (M.D. La. Sept. 20, 2018) (citing *Shepherd*, 591 F.3d at 452).

[114] *Scott*, 114 F.3d at 53 (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)).

[115] *Id*. (citing *Bell*, 441 U.S. at 539).

[116] *Shepherd*, 591 F.3d at 454 (citing *Bell*, 441 U.S. at 539).

> A State's imposition of a rule or restriction during pretrial confinement manifests an avowed intent to subject a pretrial detainee to that rule or restriction. Likewise, even where a State may not want to subject a detainee to inhumane conditions of confinement or abusive jail practices, its intent to do so is nevertheless presumed when it incarcerates the detainee in the face of such known conditions and practices.[117]

By contrast, "where the complained-of harm is a particular act or omission of one or more officials, the action is characterized properly as an episodic act or omission case."[118] In such cases, a plaintiff "complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission."[119] For purposes of imposing liability on a defendant in his *individual* capacity in such a case, a pretrial detainee must establish that the defendant acted with *subjective* deliberate indifference.[120] A person acts with subjective indifference if (1) "he knows that an inmate faces a substantial risk of serious bodily harm; and (2) he disregards that risk by failing to take reasonable measures to abate it."[121] To establish liability of a defendant in his or her *official* capacity, thereby holding a municipality accountable for the constitutional violation, the detainee "must show that the municipal employee's act resulted from a municipal policy or custom adopted or maintained with *objective* deliberate indifference to the detainee's constitutional rights."[122] The test for this form of indifference "considers not only what the

---

[117] *Hare*, 74 F.3d at 644.
[118] *Scott*, 114 F.3d at 53 (internal quotation marks omitted).
[119] *Id.* at 54.
[120] *Id.*
[121] *Anderson v. Dallas Cty., Tex.*, 286 Fed.Appx. 850, 860 (5th Cir.2008) (citing *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir.2006)).
[122] *Scott,* 114 F.3d at 54.

policy maker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights."[123]

### e. Plaintiff's Conditions-of-Confinement Claims

In Counts One and Two, Plaintiff claims that DPSC Defendants subjected him to unconstitutional conditions of confinement at CCC.[124] The Court notes that DPSC Defendants' motion focuses almost entirely on the argument that LeBlanc and Smith did not act with "deliberate indifference." However, a pretrial detainee does not need to show deliberate indifference in order to state a claim for unlawful conditions of confinement under the Fourteenth Amendment.[125] Under the Due Process Clause, "a pretrial detainee may not be punished prior to an adjudication of guilt."[126] "When a pretrial detainee complains of conditions or restrictions of detention, 'the proper inquiry is whether those conditions amount to punishment of the detainee.'"[127] As noted previously, a Plaintiff does not have to show an express intent to punish;[128] instead, a Plaintiff must satisfy the *Bell v. Wolfish* test by showing that "the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective."[129]

In the specific context of an improper classification claim, the Fifth Circuit explains the following:

> In *Jones v. Diamond* [636 F.2d 1364, 1374 (5th Cir. 1981)], this court held "[t]he confinement of pretrial detainees indiscriminately with convicted persons is unconstitutional unless such practice is reasonably related to the institution's interest in maintaining jail security ... or physical facilities do

---

[123] *Corley v. Prator*, 290 Fed.Appx. 749, 750 (5th Cir.2008) (relying on *Lawson v. Dallas Cnty.*, 286 F.3d 257, 264 (5th Cir.2002)).

[124] Rec. Doc. 5, ¶¶ 66, 77.

[125] *See Shepherd*, 591 F.3d at 454 – 455 (quoting *Hare*, 74 F.3d at 644–645).

[126] *Jones v. Dallas Cnty.*, 2022 WL 3334493, at *2 (citing *Bell*, 441 U.S. at 535).

[127] *Id.* (citing *Bell*, 441 U.S. at 535).

[128] *Shepherd*, 591 F.3d at 454 (citing *Bell*, 441 U.S. at 539).

[129] *Scott*, 114 F.3d at 53 (citing *Bell*, 441 U.S. at 539).

not permit their separation." (internal quotation marks and citation omitted). "[P]retrial detainees have a due process right to be considered individually to the extent security and space requirements permit." *Id.* Because in *Diamond* pretrial detainees and convicted persons "were confined together and treated alike[,]" the court concluded the "defendants [ ] failed to satisfy their constitutional duties." *Id.* at 1374. The court also directed the district court to grant the plaintiffs injunctive relief, specifically stating: "[T]he defendants [must] institute and operate a reasonable classification system for those confined," and "Pretrial detainees shall be classified and separated from convicted persons to the extent reasonably possible, except where detention in the same cell is required for institutional security." *Id.* at 1376; *cf. Pembroke* [ ], 981 F.2d [at] 229 [ ] (affirming finding of constitutional violation because "there was absolutely no classification system in place" to separate pretrial detainees and convicted detainees).[130]

Plaintiff argues that "the condition of confinement created is the pervasive atmosphere of violence arising from the lack of minimally-adequate classification policies and practices, lack of supervision, and lack of investigations, all of which are a direct result of LeBlanc and Smith's failure to oversee local jails housing sentenced prisoners in DPSC custody."[131] Specifically focusing on the alleged intermingling of pretrial detainees and convicted prisoners, Plaintiff further argues that "LeBlanc and Smith have not and cannot offer any legitimate governmental interest to defend their failure to respond to CCC's flouting of Basic Jail Guideline requirements by failing to have a minimally-adequate classification policy and practice."[132] Plaintiff also alleges that DPSC Defendants had knowledge of these conditions.[133]

---

[130] *Jones v. Dallas Cnty.*, 2022 WL 3334493, at *3.
[131] Rec. Doc. 32, p. 12.
[132] *Id.*
[133] *See* Rec. Doc. 5, ¶¶ 67, 71–76.

Taken as true, Plaintiff's allegations state a plausible claim for relief under the Fourteenth Amendment for unlawful conditions of confinement of a pretrial detainee.[134] By focusing only on deliberate indifference, which is not a required element on this claim, DPSC Defendants failed to make any direct argument for dismissal of Plaintiff's claim based on unlawful conditions of confinement.[135] Accordingly, DPSC Defendants failed to carry their burden, and the *Motion to Dismiss* is denied as to Plaintiff's conditions-of-confinement claim under the Fourteenth Amendment.[136]

### f. Plaintiff's Episodic Acts/Omissions Claims

Although somewhat vague in the *Amended Complaint*, Plaintiff's opposition brief suggests that the individual-capacity episodic-acts-or-omissions claims against Smith and LeBlanc are based on supervisor liability. "'A supervisory official may be held liable ... only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury.'"[137] "'In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor

---

[134] Some courts have suggested that, based on Fifth Circuit precedent, conditions-of-confinement claims are cognizable against individual actors only in their official capacities (*see Zavala*, 2018 WL 4517461, at *9 (citing *Nagle v. Gusman*, 2016 WL 768588, at *5 (E.D. La. Feb. 26, 2016) (citing, in turn, *Estate of Allison v. Wansley*, 524 Fed.Appx 963, 970 n.4 (5th Cir. 2013) ("Appellees' claim against the individual defendants is properly analyzed as an 'episodic act or omission case,' rather than 'condition of confinement' case."); *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 n.3 (5th Cir. 2000) (same); *Estate of Henson v. Wichita Cty., Tex.*, 795 F.2d 456, 463 (5th Cir. 2015); *Shepherd*, 591 F.3d at 453 (5th Cir. 2009)). In this case, the Court is denying DPSC Defendants' *Motion to Dismiss* Plaintiff's claims based on unlawful conditions of confinement, whether Plaintiff purports to lodge them as individual-capacity or official-capacity claims. The parties did not raise this issue and the Court finds it unnecessary to delve into it at this juncture.
[135] *See Murray*, 2023 WL 6544932, at *6.
[136] *See Port of Corpus Christi Auth. of Nueces Cnty., Tex. v. Port of Corpus Christi L.P.*, 57 F.4th 432, 440 (5th Cir. 2023) (agreeing with district court that defendants abandoned basis of removal due to "insufficient briefing" at the lower court and "thin" arguments at the appellate level on this issue); *see also Payton v. Town of Maringouin*, No. 18-563, 2021 WL 2544416, at *26 (M.D. La. June 21, 2021) (collecting authorities on waiver), *aff'd*, No. 21-30440, 2022 WL 3097846 (5th Cir. Aug. 3, 2022).
[137] *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)).

act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates.'"[138]

DPSC Defendants argue Plaintiff's allegations against them are insufficient because there were no allegations that LeBlanc or Smith were involved with day-to-day operations at CCC.[139] In opposition, Plaintiff argues that "[n]o facts alleging day-to-day personal participation are required to establish claims against these supervisory Defendants, who were well-aware of the unconstitutional conditions existing at CCC because they received reports regarding CCC's operations as part of their jobs at DPSC."[140] DPSC Defendants' argument on this point fails to support dismissal. Plaintiff's theories against DPSC Defendants as supervisors and policymakers do not require a defendant's direct daily involvement with a facility. In fact, DPSC Defendants themselves acknowledge this in their *Reply*, stating: "Supervisory liability exists without overt personal participation in the offensive act if the official implements a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force of the constitutional violation."[141]

Pertinent to this case, supervisor liability can be based on the alleged failure to promulgate policy.[142] Such claims also require a showing of deliberate indifference.[143] The failure to adopt a policy "can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights."[144]

---

[138] *Id.* (quoting *Gates*, 537 F.3d at 435 (internal quotation marks and citation omitted)) (emphasis in original).
[139] Rec. Doc. 30-1, p. 6.
[140] Rec. Doc. 32, p. 2.
[141] Rec. Doc. 34, p. 5 (citing *Louisiana Cleaning Sys. v. Brown*, No. CV 14-2853, 2015 WL 9581852 (W.D. La. Dec. 30, 2015)).
[142] *Grant v. LeBlanc*, No. 21-30230, 2022 WL 301546, at *5 (5th Cir. Feb. 1, 2022)
[143] *Id.*
[144] *Id.* (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)).

"[I]n a[n individual-capacity] claim alleging failure to promulgate policy as a basis for § 1983 liability, the failure must be 'an intentional choice' and amount to subjective deliberate indifference."[145] As the Fifth Circuit explained with respect to "failure-to-train" claims (and, by "logical" analogy, failure-to-promulgate-policy claims):

> To establish that a state actor disregarded a known or obvious consequence of his actions, there must be actual or constructive notice that a particular omission in their training program causes ... employees to violate citizens' constitutional rights and the actor nevertheless chooses to retain that program. A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference, because without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. Without cabining failure-to-train claims in this manner (or, logically, failure-to-promulgate-policy claims), a standard less stringent than deliberate indifference would be employed, and a failure-to-train claim would result in *de facto respondeat superior* liability.[146]

As noted, DPSC Defendants' motion is almost exclusively devoted to the argument that Plaintiff's allegations fail to sufficiently establish that Smith or LeBlanc acted with deliberate indifference. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[147] "Deliberate indifference requires a showing of more than negligence or even gross negligence."[148] According to the Fifth Circuit, "[f]or an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be

---

[145] *Brumfield v. Hollins,* 551 F.3d 322, 328 (5th Cir.2008).
[146] *Porter,* 659 F.3d at 447 (citations, alterations, and quotations omitted).
[147] *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)).
[148] *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994)).

drawn that a substantial risk of serious harm exists, and he must also draw the inference."[149] "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity."[150]

The Court finds that the allegations, taken as true for purposes of this motion, are sufficient to state a plausible claim that Smith and LeBlanc acted with deliberate indifference under a failure-to-promulgate-policy theory. Plaintiff's overarching theory against DPSC Defendants is largely encompassed in the following paragraph of the *Amended Complaint*:

> Defendants knew of the extreme levels of violence at CCC, the lack of proper classification, the lack of effective responses to known drivers of violence, and the chronic understaffing at CCC, but nevertheless continued to operate the facility with minimal adjustments, including continuing to house sentenced DPSC prisoners in the facility, allowing an intolerable risk of harm to come to those held in custody at CCC, including Plaintiff.[151]

In support of his allegations of knowledge, Plaintiff points in part to the monthly reports that are submitted to Smith.[152] The reports allegedly contain information showing that an adequate inmate classification system was lacking at CCC and that violence and injuries were regularly occurring.[153] Plaintiff further alleges that Smith reports to LeBlanc and that the two communicate regarding any issues under Smith's supervision.[154]

Plaintiff claims that LeBlanc develops strategic plans for DPSC:

---

[149] *Id.* (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998)).
[150] *Id.* (quoting *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)).
[151] Rec. Doc. 5, ¶ 71.
[152] *Id.* at ¶ 31.
[153] *Id.* at ¶ 33.
[154] *Id.* at ¶ 32.

> One objective listed in his 2019 strategic plan was to effectively use local facilities as an alternative to state correctional facilities. To meet this strategic goal, LeBlanc intended both to ensure that local jails complied with the Guidelines, and to increase the use of reception centers to assist with appropriate housing assignments. In 2019, LeBlanc was aware that local jails needed to comply with the Guidelines. He was also aware that DPSC needed to ensure that local jails were using appropriate classification practices and procedures if DPSC was to continue housing people in such "outcamp" facilities.[155]

Plaintiff also asserts that Smith had the following pertinent responsibilities:

> Smith is responsible for ensuring appropriate policies and procedures are in place to comply with the provisions of the Guidelines. He is directly responsible for monitoring the Guidelines process of local facilities and is responsible for overseeing audits of those facilities.[156]

Moreover, Plaintiff has plead facts which support the allegation that the problems are more than mere isolated incidents. Plaintiff specifically alleges that "[i]n 2022, the year Plaintiff was attacked, CCC reported 37 assaults for the year. That year CCC had an annual average total population of 791. Accordingly, at a minimum 9.3% of the incarcerated population at CCC were involved in an assault reported to Smith and LeBlanc during 2022."[157] The prevalance of the problem is also supported by Plaintiff's allegations regarding reported instances of serious altercations and assaults at facilities in other parishes involving pretrial detainees and convicted prisoners who were housed on the same unit.[158]

DPSC Defendants attempt to downplay these prior incidents by arguing that assaults can happen for reasons other than improper classification. However, as

---

[155] *Id.* at ¶ 45.
[156] *Id.* at ¶ 6.
[157] *Id.* at ¶ 35.
[158] *Id.* at ¶ 49.

explained by another section of this Court under similar circumstances, "such merits-based, causation-related arguments are more properly resolved at the summary judgment stage, or at trial."[159]

In sum, Plaintiff alleges that, despite the policies and incident reports readily available to DPSC Defendants, "Smith and LeBlanc have willfully turned a blind eye and refused to direct audits that would meaningfully examine non-DPSC facilities' implementation of the Guidelines."[160] Taken together, the Plaintiff makes plausible allegations that DPSC Defendants failed to adopt an appropriate classification policy and acted with deliberate indifference to Plaintiff's safety. Accordingly, DPSC Defendants' motion is denied as to the individual-capacity supervisor liability claims.

Plaintiff brings an official-capacity claim against LeBlanc in Count Two.[161] "Official-capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an agent."[162] Official-capacity suits are, therefore, "treated as a suit against the entity" itself.[163] Accordingly, "[t]o determine whether a public official is liable in his official capacity, the Court looks to the jurisprudence discussing whether a municipality or local government entity is liable under section 1983."[164]

"Although municipalities cannot be held liable under section 1983 by virtue of the doctrine of respondeat superior, they are subject to such liability where official custom or

---

[159] *Murray*, 2023 WL 6544932, at *9.
[160] Rec. Doc. 5, ¶ 39.
[161] *Id*. at ¶¶ 69–84.
[162] *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (internal quotation marks omitted).
[163] *Id*. at 166; *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.").
[164] *Skinner v. Ard*, 519 F. Supp. 3d 301, 312 (M.D. La. 2021) (quoting *Romain v. Governor's Off. of Homeland Sec.*, No. 14-660, 2016 WL 3982329, at *6 (M.D. La. July 22, 2016) (citations and quotations omitted)).

policy is involved in the injury."[165] This principle was first recognized in *Monell v. Department of Social Services*.[166] "Proof of municipal liability sufficient to satisfy *Monell* requires: (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)."[167]

An "official policy or custom" giving rise to liability may be "a persistent, widespread practice which, although not officially promulgated, is so common and well settled as to constitute a custom that fairly represents municipal policy."[168] However, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity."[169] To plausibly plead "a practice 'so persistent and widespread as to practically have the force of law,' ... a plaintiff must do more than describe the incident that gave rise to his injury."[170] Further, to show "moving force" causation, a plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."[171] "That is, 'the plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.'"[172]

In Count Two, Plaintiff alleges that "widespread practices, which were so well-settled as to constitute the *de facto* policy of the Defendants, were allowed to exist

---

[165] *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir. 1985) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)).
[166] 436 U.S. 658 (1978).
[167] *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).
[168] *Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997) (quotation omitted).
[169] *Colle v. Brazos Cnty., Tex.*, 981 F.2d 237, 245 (5th Cir. 1993).
[170] *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).
[171] *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (quoting *Brown*, 520 U.S. at 404).
[172] *Id.* (quoting *Brown*, 520 U.S. at 411).

because policymakers with authority over these acts exhibited deliberate indifference to the problems, thereby effectively ratifying them."[173] In so alleging, Plaintiff does more than merely describe the incident that gave rise to his injury; he points to other instances of violence both at CCC and in other facilities with similar conditions under LeBlanc's purview.[174] Plaintiff also alleges that LeBlanc had actual knowledge of the policy or custom, and that the policies were a moving force behind constitutional violations.[175] Accordingly, the Court finds that Plaintiff's allegations meet the requirements of stating a *Monell* claim.

The Court has already discussed the supervisory claims against both DPSC Defendants in their individual capacities above. Again, to hold LeBlanc liable in his official capacity, Plaintiff "must show that the municipal employee's act resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference to the detainee's constitutional rights."[176] Courts within this circuit have recognized that "for supervisors not personally involved in the alleged constitutional violations, the legal elements of an individual's supervisory liability and a municipality's liability for failure to train and/or supervise are similar enough such that the same analysis applies to both individual and official capacity claims."[177] Therefore, having already found that Plaintiff sufficiently plead the supervisory liability claim, the motion is likewise denied as to this claim against LeBlanc in his official capacity.

---

[173] Rec. Doc. 5, ¶ 82.

[174] *Id.* at ¶¶ 27, 33–36, 49.

[175] *Id.* at ¶¶ 66, 79.

[176] *Scott,* 114 F.3d at 54.

[177] *Jordan v. Gautreaux*, 593 F. Supp. 3d 330, 361 (M.D. La. 2022). *See also Lively v. Theriot*, No. 13-2756, 2015 WL 3952159, at *9 n.7 (W.D. La. June 29, 2015) (citing *Doe*, 15 F.3d at 452–54 nn.7–8); *and Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) ("The standard applicable to failure to train allegations against supervisors is based on that for municipal liability." (citing *Doe*, 15 F.3d at 452–54 and nn.7–8)).

### 3. DPSC Defendants' Additional Arguments

#### a. Specificity in Complaint

DPSC Defendants argue in their *Reply* that "Plaintiff's Complaint set forth no specifics as to what conduct, on the part of Secretary LeBlanc and Mr. Smith, Plaintiff sought to be enjoined or be declared improper."[178] This argument is rejected, in part because it was raised for the first time in the *Reply* brief.[179] Additionally, the Court easily gleans from an overall reading of the *Amended Complaint* that Plaintiff seeks to enjoin DPSC Defendants from their allegedly unconstitutional conduct, particularly with respect to the classification and housing system of inmates with different legal status.

#### b. Discretionary Immunity

DPSC Defendants argue they are entitled to discretionary immunity, requiring dismissal of all state law claims against them.[180] But as Plaintiff points out, no state law claims have been brought against Smith or LeBlanc.[181] Thus, DPSC Defendants have no argument for discretionary immunity.

## III. CONCLUSION

For the reasons stated above, DPSC Defendants' *Motion to Dismiss Pursuant to Rule 12(b)(1) & (6)*[182] is DENIED.

---

[178] Rec. Doc. 34, p. 7.
[179] In the Fifth Circuit, a district court abuses its discretion when it considers new arguments raised for the first time in a reply brief without providing the "non-movant an adequate opportunity to respond prior to a ruling." *Residents of Gordon Plaza, Inc. v. Cantrell*, 25 F.4th 288, 296 (5th Cir. 2022).
[180] Rec. Doc. 30-1, pp. 7–8.
[181] Rec. Doc. 32, pp. 21–22.
[182] Rec. Doc. 30.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this ___ day of _____, 2024.


_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**