**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| ROBERT YOUNG<br>Plaintiff<br><br>Versus<br><br>JAMES LEBLANC, SECRETARY OF DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, et al.<br><br>Defendants | *<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Civil Docket Number:<br>3:22-cv-00681-SDD-RLB<br><br>JUDGE:<br>SHELLY D. DICK<br><br>MAGISTRATE:<br>RICHARD L. BOURGEOIS |

**REPLY IN SUPPORT OF**
**PLAINTIFF'S FIRST MOTION TO COMPEL DISCOVERY RESPONSES FROM SMITH AND LEBLANC**

In their response to Plaintiff's First Motion to Compel Discovery Responses, Department of Public Safety and Corrections (DPSC) Defendants LeBlanc and Smith continue to misrepresent the discovery they have actually produced and fail to acknowledge their responsibility to actually produce documents that they are relying on as responsive to Plaintiff's requests in this case. As discussed below[1], additional discovery produced only after Plaintiff had to file his motion to compel still does not completely satisfy Plaintiff's requests. Defendants' objections to discovery production outlined in their response continue to be unavailing.

**A. DPSC's effort to narrow discovery on the basis of a "significant legal distinction between DPSC's obligations to DPSC prisoners and pretrial detainees" is fatally undercut by this Court's ruling on Motion to Dismiss and Fifth Circuit jurisprudence.**

Defendants ignore the permissive standard of relevance in the course of discovery. As one section of the Eastern District of Louisiana has recently explained:

> At the discovery stage, relevance includes any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. Discovery should be allowed

[1] See infra at 4-8.

> unless the party opposing discovery establishes that the information sought can have no possible bearing on the claim or defense of the party seeking discovery. If relevance is in doubt, the court should be permissive in allowing discovery. Facts that are not considered in determining the ultimate issues may be eliminated in the due course of the proceeding.[2]

Defendants have not established that the requested information has no possible bearing on the claims or defenses. Defendants insist that the scope of information sought ignores "the significant legal distinction between DPSC's obligations to DPSC prisoners and pretrial detainees."[3] But Defendants do not specifically identify this significant legal distinction or how it renders Plaintiff's requests irrelevant.[4] Further, Fifth Circuit jurisprudence[5] and a recent ruling of this Court firmly establish that DPSC "has responsibility over local jails once they house DOC prisoners."[6] Particularly given DPSC's responsibility over local facilities, Plaintiff has reason to believe the records requested contain information relevant to demonstrating Defendants' failure to protect incarcerated people from harm.

**B. DPSC Defendants' continued reliance on Murray[7] production is misplaced and they must produce versions of the Murray documents on which they wish to rely.**

Defendants' continued insistence that the Murray production satisfies their discovery obligations in the instant case ignores the twin facts that 1) counsel has not identified which specific documents they claim are responsive to the discovery requests in this case, and 2) in some instances, the Murray production is simply not responsive to the request at issue.

---

[2] Lou v. Lopinto, No. 21-80, 2022 WL 1447554, at *3 (E.D. La. Mar. 24, 2022) (quotations and citations removed).
[3] ECF No. 52 at 5.
[4] The relevance of Plaintiff's requests in the context of both his First Amended Complaint and the Court's denial of DPSC Defendants' Motion to Dismiss is outlined at ECF No. 51-1 at 5-7.
[5] Crittindon v. LeBlanc, 37 F. 4th 177, 191 (5th Cir. 2022). See also discussion at ECF No. 51-1 at 7-8.
[6] Murray et al v. LeBlanc et al, No. 21-592-JWD-RLB, M.D. La., ECF No. 215, denying Motions for Summary Judgment as Crittindon "establishes that DOC has responsibility over the local jails once they house DOC prisoners."
[7] Murray et al v. LeBlanc et al, No. 21-592-JWD-RLB, M.D. La.

1. Counsel's failure to produce bates-numbered versions of the Murray production and state with specificity what aspects of this production Defendants regard as responsive creates unnecessary confusion and delay.

Plaintiff has repeatedly explained to DPSC Defendants that production in Murray was not bates-numbered and that there is no mechanism to ensure Defendants and Plaintiff are talking about the same set of documents short of reproducing and bates-numbering the documents. As noted in the memorialization of the October 22, 2024 Rule 37 conference, counsel discussed "reviewing and reproducing that [Murray] discovery for Young"[8] to ensure all counsel were aligned as to what had and had not been produced. DPSC Defendants' opposition to this motion is the first time they even attempted to identify specific Murray Request for Production (RFP) responses they believe are responsive to Young RFPs, and even this effort is incomplete. Defendants' failure to abide by their earlier commitment in the discovery process and reproduce the Murray documents as part of the Young discovery has led to unnecessary confusion. For example, when Plaintiff raised that audits of Catahoula Correctional Center (CCC) before 2023 had still not been produced, DPSC counsel insisted they had been produced in Murray. DPSC's counsel in Murray may have intended to produce these records, but for whatever reason, they were not actually produced to the Murray plaintiffs. If DPSC counsel in Young is going to rely on what they believe was produced in Murray, there must be a method for identifying those documents common to both parties. The absence of bates numbers makes this identification impossible absent reproduction of the Murray discovery on which DPSC Defendants would like to rely.

As it is 2025, nearly all discovery is transmitted electronically and bates-numbering can be done on large batches of documents in minutes. In this context, DPSC Defendants' refusal to take this basic step of producing discovery in a way that permits a discussion of what may or may not

[8] ECF No. 51-4 at 6.

still be outstanding is simply baffling to Plaintiff. Unfortunately, this Court now must arbitrate an entirely-avoidable squabble over what discovery has and has not been produced. Plaintiff requests, to the extent Defendants seek to rely on Murray discovery production, that this discovery be reproduced by counsel in the instant case in a manner that allows all counsel to understand what documents are being proffered as responsive to specific Young requests.

2. Murray production is not fully responsive to Plaintiff's requests in Young.

Looking at Defendants' representations as to which specific responses in the Murray production they maintain are responsive to Young discovery requests, Plaintiff notes that significant documents remain outstanding.

Local facility incident reporting:

Defendants' generalized reliance on the production in response to Murray RFP No. 5 is misplaced. All that was produced in Murray was a 24-page document outlining DPSC's 2018 Regulation for unusual occurrence reporting. This document is not responsive to Plaintiff's RFP No. 5 in Young, which requests procedures or plans "pursuant to BJG I-C-001 from any parish holding DPSC prisoners form January 2019-present."[9] BJG I-C-001 requires that "[t]here is a written plan, submitted to the Secretary of DPS&C that specify the procedures to be followed in situations that threaten facility security."[10] Plaintiff must ensure that Defendants have made diligent efforts to locate such emergency plans required to be submitted to the Secretary before stating that no such plans are in Defendants' possession.

Similarly, information responsive to Young RFP Nos. 6 and 7 remains outstanding. While the Murray production does include documents referred to as monthly activity rollups, which Defendants have supplemented with additional years, these documents are not fully responsive to

[9] ECF No. 51-3 at 8.
[10] Exhibit 1, 2022 Basic Jail Guidelines at 2.

Plaintiff's requests seeking both documents related to and monthly reports generated pursuant to BJG IV-C-015, which requires "a written report of all offender deaths shall be submitted to DPS&C on Form AM-I-4-x (via email to DOC-HQ Cat A Notfications@la.gov or via fax to 225-342- 3349)."[11] Further, Young RFP No. 7 also seeks information pursuant to BJG IV-B-008 (later revised to VII-B-010)[12] and DPSC Regulation C-05-01 (later revised to AM-I-4), which local facilities are required to submit to DPSC. The monthly activity rollups provided in Murray and supplemented in the instant case are only partially responsive to this request as they do not include all information included in the monthly activity reports submitted by local facilities and do not include all information related to deaths required by BJG IV-C-015. Accordingly, neither the original Murray production nor the Young supplement satisfy these requests. Plaintiff also notes that the audits requested by Murray RFP No. 4 do not contain information that fully satisfies the Young RFP No. 6 related to reporting of deaths in local facilities.

For similar reasons, production on Murray RFP No. 7 is not responsive to Young RFP Nos. 40, 47, and 48, which request reports themselves related to injuries, contraband, and shakedowns.

Policies, Procedures, and Basic Jail Guidelines Revisions and Notes:

Defendants' production of a partial 2023 Basic Jail Guidelines is not responsive to Plaintiff's requests for information related to revisions, drafts, and reviews of the Guidelines from 1996 to present. As Defendants' themselves noted, Murray production only includes BJG revisions from 2019, leaving a significant gap in production of responsive documents. Plaintiff also notes that policies and procedures he requests are not fully satisfied by the Guidelines but also encompass various DPSC regulations and policies which have not yet been produced.

Audits and Compliance with Basic Jail Guidelines:

---

[11] Exhibit 1, 2022 Basic Jail Guidelines at 3.
[12] Exhibit 1, 2022 Basic Jail Guidelines at 4.

As noted above, Defendants have provided CCC audits for 2021 and 2022. But Plaintiff's RFP No. 4 seeks all audits for 2016 to present from all local facilities holding DPSC prisoners. While counsel in Murray provided some responsive audits, they did not provide all responsive audits.[13] Accordingly, Defendants' approach of only providing 2023 and 2024 audits is not fully responsive to Plaintiff's request. Additionally, although Defendants have provided the 2023 audit for the Catahoula Parish Jail, they have not provided the 2023 audit for CCC. Plaintiff again requests that Defendants provide all audits as this information goes directly to the heart of Plaintiff's claims related to DPSC's inadequate auditing process. To the extent Defendants in Young wish to rely on audits produced in Murray, Plaintiff requests that these be bates-numbered and produced in such a way that allows for clear identification of missing documents.

Further, these audit reports do not fully respond to Plaintiff's RFP Nos. 15, 16, and 17, which seek plans, letters, emails, and other information related to non-compliance with the Basic Jail Guidelines and any remediation efforts undertaken to resolve non-compliance. Additionally, the audit reports themselves are not responsive to Plaintiff's RFP No. 18, which seeks information about the validity of the Basic Jail Guidelines audit process. Finally, the audit reports themselves are not fully responsive to Plaintiff's RFP No. 35 a. to f. seeking audits conducted by other entities beyond DPSC.[14]

[13] Audits are conducted by a DPSC team leader for each region. In Murray, counsel produced audits subdivided by region, but within each region the only provided a limited selection of facilities. For example, the Central Region consists of 17 different facilities which are monitored. For 2016, audits for 12 of 17 facilities were provided; for 2019, 13 of 17 were provided; for 2021, 11 of 17 were provided; for 2022, 7 of 17 were provided; and for 2023, 8 of 17 were provided.

[14] Plaintiff has reason to believe DPSC has other investigations and audits from the other entities requested in RFP No. 35. The Department of Justice has previously issued findings letters to DPSC and has recently filed suit over DPSC's failed oversight of local facilities related to over detention. United States v. The Louisiana State Department of Public Safety and Corrections, La. M.D. docket no. 3:24-cv-01041-BAJ-RLB. Plaintiff has also requested information related to audits and inspection by entities setting independent standards for correctional practice including the National Institute of Corrections, National Commission on Correctional Health Care and the American Correctional Association. Secretary LeBlanc has previously testified that his goal is to have local facilities accredited by at least some or all of these entities.

Additionally, while Defendants provided some limited production in response to RFP No. 11 related to training of Basic Jail Guidelines team leaders from 2016 to present, this production is limited to October 2022 and after. In Murray, Counsel provided a limited production of training agendas only dated from 2022. Thus, no production of training materials for Basic Jail Guidelines team leaders prior to 2022 has been provided in either Murray or Young. Plaintiff wishes to confirm that there is in fact no documentation of any training provided to team leaders before 2022.

### C. Defendants have failed seek out and produce other areas of discovery unrelated to Murray.

Hospital Routes and Billing Records:

Plaintiff again re-urges his requests for records related to hospital routes and billing records. The partial Basic Jail Guidelines produced in response to RFP No. 1 are not responsive to Plaintiff's RFP No. 46 for documents pertaining to routing prisoners to the hospital or outside medical care. The relevance of this request is detailed in Plaintiff's Motion to Compel.[15] DPSC Defendants' commitment to produce additional documents related exclusively to Mr. Young is not responsive to this request.

Additionally, Defendants' insistence that they are not in possession of information (including medical records of people sent to hospitals from local facilities) is undermined by depositions of CCC nurses who testified: (1) "whenever an offender is in the hospital, they [DOC] get the reports also and then get it to us,"[16] and, (2) "[s]o if they are admitted, DOC, they --they send their nurses' notes or whatever to DOC just like they would do us. You know, I would have to call for mine . . . and then DOC would forward what they get because they know that he is our offender here . . . they would forward what they get to us."[17] Nurse Nix also testified that even

---

[15] ECF No. 51-1 at 11.
[16] Exhibit 2 Deposition of Crystal Breland at 111:24-25.
[17] Exhibit 3, Deposition of Robin Nix at 101:1-19.

when pretrial people were sent to the hospital from CCC, nurses had a form to notify DPSC of that trip.[18]

Thus, upon information and belief, DPSC is in possession of medical records and itemized medical bills related to emergency and hospital care provided to people held at local facilities, but has failed to produce this responsive information.

Plaintiff also continues to seek information related to Mr. Young himself, other prisoners, and the two named Defendants. Defendants' opposition is a unclear regarding what they have and have not produced and Plaintiff wishes to clarify. Defendants have yet to produce a master prison record for Mr. Young or any of the other specific individuals requested in RFP No. 52 (except Earldarius Brooks). As three months have passed since service of discovery and multiple discussions regarding these specific requests have occurred, Plaintiff cannot accept Defendants' position that they are still attempting to locate and produce a master prison record for Mr. Young and the other specific individuals.

Similarly, although Defendants have produced responsive information for half of the requested employees in RFP No. 54, Plaintiff is still awaiting production for the two named Defendants in the case, Smith and LeBlanc, three months after discovery was served and a month before discovery closes.

**D. <u>Conclusion</u>**

Defendants' response is replete with erroneous suggestions that unresponsive documents are in fact responsive to Plaintiff's requests, as well as with claimed intentions to provide responsive documents. Discovery was propounded on September 11, 2024, and over three months later Defendants have failed to produce even the most basic information related to the named

[18] Exhibit 3, Deposition of Robin Nix at 99:3-24.

Plaintiff and have willfully refused to produce information for the full relevant time period. In the meantime, the parties have had to seek an extension of the scheduling order, with a discovery cut-off date now set for February 28, 2025 – only a month away. Accordingly, Plaintiff requests that this Court compel Defendants to engage in the discovery process in good faith and produce responsive outstanding documents as soon as possible.

Respectfully submitted,

*s/ Elizabeth Cumming*
**ELIZABETH CUMMING (**Bar Roll No. 31685), T.A.
**EMILY WASHINGTON** (Bar Roll No. 34143)
**JACK STEPHENS** (Bar Roll No. 41468)
Roderick and Solange MacArthur Justice Center
4400 S. Carrollton Ave.
New Orleans, LA 70119
Phone: (504) 620-2259
Fax: (504) 208-3133
elizabeth.cumming@macarthurjustice.org
emily.washingting@macarthurjustice.org

-AND-

/s/ Stephen J. Haedicke
**STEPHEN J. HAEDICKE** (Bar Roll No. 30537)
Law Office of Stephen J. Haedicke
1040 Saint Ferdinand St.
New Orleans, LA 70117
(504)291-6999 Telephone
(504)291-6998 Fax
stephen@haedickelaw.com

*Attorneys for Plaintiff*