UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBERT YOUNG** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-681-SDD-RLB** |
| **JAMES LEBLANC, ET AL.** | |

## ORDER

Now before the Court is Robert Young's ("Plaintiff") First Motion to Compel Discovery Responses From Defendants LeBlanc and Smith (the "Motion to Compel"). (R. Doc. 51). It is opposed by James Leblanc ("LeBlanc"), the Secretary of the Louisiana Department of Public Safety and Corrections (the "DPSC"), and Seth Smith ("Smith"), the Chief of Operations of the DPSC. (R. Doc. 52). Plaintiff has replied to LeBlanc and Smith's opposition. (R. Doc. 57).

**I.     Background**

On August 8, 2023, Plaintiff filed a complaint in this Court against LeBlanc, in his individual and official capacities as the Secretary of the DPSC; Smith, in his individual and official capacities as the Chief of Operations of the DPSC; Tony Mancuso, in his individual and official capacities as the Sheriff of the Calcasieu Parish Sheriff's Office; Toney Edwards, in his individual and official capacities as the Sheriff of Catahoula Parish Sheriff's Office ("CPSO"); Eric Stott, in his individual and official capacities as the current warden of the Catahoula Correctional Center (the "CCC"); Pat Book, the former warden of the CCC, in his individual capacity; CPSO Sgt. Beason in his individual capacity; CPSO Sgt. Prince in his individual capacity; CPSO Sgt. Guthrie in his individual capacity; CPSO Dep. Sanchez in his individual capacity; CPSO Dep. Margie Price in his individual capacity; and unknown CPSO Deps. Jane and John Does in their individual capacities. (R. Doc. 1). Plaintiff amended his complaint on October 4, 2023, but he removed none of the defendants from the case. (R. Doc. 5).

1

Plaintiff has brought a 42 U.S.C. § 1983 action against the above defendants for alleged 8th and 14th Amendment violations that he alleges occurred while he was a pretrial detainee at the CCC from April 19, 2022 to August 8, 2022. (R. Doc. 5 at 7). Plaintiff alleges that two CCC corrections officers failed to intervene when he was attacked by other inmates. Based on this allegation, and others, Plaintiff argues that the defendants were negligent under state law and that LeBlanc and Smith were responsible for the acts and omissions of the CCC corrections officers. Plaintiff seeks declaratory relief, injunctive relief, attorneys' fees, and damages.

The deadline for completing all discovery except experts was February 28, 2025. (R. Doc. 49). On September 11, 2024, Plaintiff sent his First Request for Production of Documents ("RFP(s)") to LeBlanc and Smith ("Defendants"). (R. Doc. 51-3). On November 6, 2024, Defendants provided their original responses. (R. Doc. 51-5). Thereafter, Defendants provided additional documents through their first, second, third, and fourth supplemental responses, dated December 18, 2024, January 3, 2025, January 8, 2025, and January 9, 2025, respectively. (R. Docs. 51-6; 52-1 at 40, 81, 122, 164). Unsatisfied with the first of these supplemental responses, and before receiving the rest, Plaintiff filed the instant motion, seeking additional responses to:

- Basic Jail Guidelines Reviews, Edits, and Drafts: RFP Nos. 1 and 2
- Contracts Related to the Local Facility System: RFP No. 3
- Local Facilities' Incident Reports and Contraband: RFP Nos. 5-7, 13, 34, 39-40, and 47-48
- Audits and Compliance with the Basic Jail Guidelines: RFP Nos. 10-11, 15-18, and 35
- Hospital Routes and Billing Records: RFP Nos. 28-29, 45-46, and 50-51
- Information Related to Mr. Young and Others: RFP Nos. 36, 49, and 52
- Information Related to DPSC Employees: RFP No. 54

2

## II. Law and Analysis

### A. Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b). A party must respond or object to a request for production within thirty days after service of the discovery. *See* Fed. R. Civ. P. 34. Insufficient or untimely objections are waived. *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989). Objections are sufficient if they "state whether any responsive materials are being withheld on the basis of th[e] objection." Fed. R. Civ. P. 34. "[C]onclusory objections that the requested discovery is 'overly broad, burdensome, oppressive and irrelevant' are insufficient[.]" *Scott v. United States Postal Serv.*, No. CV 15-712-BAJ-EWD, 2016 WL 7440468, at *4 (M.D. La. Dec. 27, 2016) (Citations omitted). Irrespective of objections, however, a court must limit discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other . . . more convenient, less burdensome, or less expensive [source]; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2).

### B. Plaintiff Has Not Adequately Complied with Fed. R. Civ. P. 37

Plaintiff's counsel emailed Defendants' counsel on November 12, 2024, seeking supplemental responses to RFP Nos. 1-3, 5-11, 13, 15-18, 28-29, 34-36, 39-40, and 42-54. (R. Doc. 51-4). On November 14, 2024, Plaintiff and Defendants' counsel held a Fed. R. Civ. P. 37 conference during which they discussed RFP Nos. 36 and 52, and Defendants committed to

3

substantive production of documents by November 27, 2024. (R. Doc. 51-1 at 4). It is not clear from Plaintiff's filings whether any other RFP Nos. were specifically addressed during the conference, but Defendants sent Plaintiff supplemental responses on December 18, 2024. (R. Doc. 51-6). The Motion to Compel states that the December 18, 2024 supplemental responses are not sufficient, but Plaintiff fails to reveal that any Fed. R. Civ. P. 37 conferences were held after Defendants provided the December 18, 2024 supplemental responses.

    Fed. R. Civ. P. 37 requires a motion to compel to "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a). A certification "'must accurately and specifically convey . . . who, where, how, and when the respective parties attempted to personally resolve [a] discovery dispute.'" *Persley v. State Farm Mut. Auto. Ins. Co.,* No. 5:19-CV-01685, 2021 WL 1095323, at *2 (W.D. La. Feb. 16, 2021) (citations omitted). Stating only that his counsel "attempted to confer in good faith with counsel for Defendants LeBlanc and Smith in an effort to obtain discovery without filing the instant motion, but these efforts have proved fruitless[,]" Plaintiff fails to reveal "where, how, and when" a Fed. R. Civ. P. 37 conference regarding the December 18, 2024 supplemental responses occurred, or whether one occurred at all. (R. Doc. 51 at 6). Consequently, this Court may deny Plaintiff's Motion to Compel purely on the basis that he has failed to comply with Fed. R. Civ. P. 37. However, considering that Defendants have not objected to the Motion to Compel on this basis and that discovery is now closed, "the Court will not deny the Motion to Compel in its entirety in light of this failure[,]" but will consider Plaintiff's failure when apportioning costs. *Walker LP v. Certain Underwriters at Lloyds, London,* No. CV 22-485-BAJ-RLB, 2023 WL 6134767, at *5 (M.D. La. Sept. 19, 2023) (citation omitted).

4

### C. A Brief Overview of *Murray v. LeBlanc*

In *Murray v. LeBlanc et al,* Civil Action No. 21-592*,* multiple pretrial detainee plaintiffs alleged they were attacked by other inmates at Madison Parish Correctional Center. *Murray v. LeBlanc,* No. CV 21-592-JWD-RLB, 2023 WL 6544932, at *1 (M.D. La. Aug. 31, 2023). Smith and LeBlanc were made defendants. *Id.* During the discovery phase in *Murray*, Plaintiff sent Smith and LeBlanc numerous RFPs, nearly identical to those propounded upon Smith and LeBlanc in the instant case. (R. Doc. 189-66 in CV 21-592-JWD-RLB). Smith and LeBlanc provided numerous documents (the "*Murray* Docs") in response to the RFPs in *Murray*, and these were received, on November 3, 2023, by the *Murray* plaintiffs' counsel. (R. Doc. 51-4 at 5). Counsel for the Plaintiff in this case is the same as the counsel for the plaintiffs in *Murray*.

Due to the similarities between the two cases and their RFPs, Defendants responded to many of Plaintiff's RFPs by simply directing Plaintiff to the *Murray* Docs. From the briefing, it is clear Plaintiff's counsel have reviewed the *Murray* Docs, which were provided in bulk without bates stamps, but found them to be insufficient. This Court does not have access to the *Murray* Docs, but has reviewed the RFPs propounded upon Smith and LeBlanc in *Murray* as well as their objections and written responses to such. (R. Doc. 189-66 in CV 21-592-JWD-RLB).

### D. Basic Jail Guidelines Reviews, Edits, and Drafts: RFP Nos. 1 and 2

**RFP No. 1:** All drafts, reviews, revisions and / or edits to the Basic Jail Guidelines from January 1, 1996 to present.

**Original Response:** Defendants object to this Request on grounds it is over broad and unduly burdensome, not limited to the relevant time period of Plaintiff's detention and not relevant or proportional to the claims at issue or needs of the case. Plaintiff was a pretrial detainee, not a DPSC sentenced prisoner. The Basic Jail Guidelines are not applicable to individuals, such as Plaintiff, who are pretrial detainees. Defendants further object to this Request on grounds it seeks documents already in Plaintiff's counsel's possession. Subject to and without waiving these objections, Defendants refer Plaintiff to documents previously produced to Plaintiff's counsel in the *Murray v. LeBlanc et al* matter, Civil Action No. 21-592.

5

**First Supplemental Response:** Subject to and without waiving the objections set forth in Defendants' original response above, Defendants refer Plaintiff to Bates Numbers DPSC-000005 – DPSC-000060, produced on December 4, 2024.

**RFP No. 2:** All documents, memorandums, meetings minutes, emails, drafts, redlines, comments or other records pertaining to initial development and any revisions to the Basic Jail Guidelines from January 1, 1996 to present.

**Original Response:** Defendants object to this Request on grounds it is over broad, not limited to the relevant time period of Plaintiff's detention and not relevant or proportional to the claims at issue or needs of the case. Plaintiff was a pretrial detainee, not a DPSC sentenced prisoner. The Basic Jail Guidelines are not applicable to individuals, such as Plaintiff, who are pretrial detainees. Notwithstanding, this Request is unduly burdensome and is not limited to the relevant time period of Plaintiff's detention. Defendants further object to this Request on grounds it seeks documents already in Plaintiff's counsel's possession. Subject to and without waiving these objections, Defendants refer Plaintiff to documents previously produced to Plaintiff's counsel in the *Murray v. LeBlanc et al*. matter, Civil Action No. 21-592.

**Supplemental Response:** Subject to and without waiving the objections set forth in Defendants' original response above, Defendants refer Plaintiff to Bates Numbers DPSC-000005 – DPSC-000060, produced on December 4, 2024.

Plaintiff argues the *Murray* Docs and the supplemental responses are insufficient because they do not include information about the Basic Jail Guidelines' (the "BJG") origins, drafts, or revisions. In response to Defendants' objection that the BJG do not apply to pretrial detainees, Plaintiff argues that the BJG are relevant, whether or not they address pretrial detainees, because they govern the DPSC, LeBlanc, and Smith's supervisory role over local facilities such as the CCC. (R. Doc. 51-1 at 7, 8) (citing *Crittindon v. LeBlanc*, 37 F.4th 177, 191 (5th Cir. 2022) ("DPSC is responsible for the local jails once they house DPSC prisoners. DPSC enters into contracts with local jails to house DPSC's prisoners. . . . Through the promulgation of the Basic Jail Guidelines and DPSC's audits of local parish jails, there is ample evidence that these DPSC officials had power to control the facilities in which DPSC housed its prisoners."). Defendants argue they adequately responded to RFP Nos. 1 and 2 by producing the BJG dated 2011; 2019; July 31, 2022; and November 16, 2023, as well as the Department Regulations Jail Operations

6

Basic Guidelines No. JO-1. (R. Doc. 52 at 6). This Court has not been provided with these BJG, but concludes they were provided to Plaintiff as he does not state otherwise in his reply to Defendant's opposition.

The BJG are relevant to this case because, as the Fifth Circuit explained, "DPSC officials . . . are responsible for determining the content of the [BJG], and DPSC employees regularly audit local jails housing state prisoners to ensure compliance[ so that i]f DPSC discovers a jail's noncompliance with the [BJG], it must work with the jail to reach compliance [or] remove DPSC prisoners from the institution." *Crittindon*, 37 F.4th at 182. While Plaintiff was only a pretrial detainee, and not a DPSC prisoner, he was detained at the CCC, a facility being monitored by the DPSC for compliance with the BJG. Thus, the BJG and its enforcement is relevant to the CCC's conditions and Plaintiff's claims against Smith and LeBlanc.

However, RFP Nos. 1 and 2 are overbroad. Plaintiff was detained at the CCC from April 19, 2022 to August 8, 2022, yet Plaintiff seeks all versions and mentions of the BJG as far back as January 1, 1996. As RFP Nos. 1 and 2 are not limited to the relevant time period and seek information not proportional to the needs of the case (all mentions and drafts of the BJG), this Court will not compel any further response to RFP Nos. 1 and 2. *See Gutierrez v. State Farm Lloyds,* No. 7:14-CV-430, 2015 WL 13188353, at *6 (S.D. Tex. Jan. 22, 2015) (request for "all drafts and versions of" documents in personnel files of all individuals that handled relevant insurance claim was overbroad, with court emphasizing plaintiff's request for drafts); *Mario Guardado & Maria Guardado v. State Farm Lloyds & Dion Mckinley,* No. 3:14-CV-2641-P (BF), 2015 WL 12724048, at *3 (N.D. Tex. Dec. 21, 2015) (met with facts and RFP similar to *Gutierrez,* court did "not find that the request for 'all drafts or versions of requested documents,' [wa]s germane to the present issues," and denied Motion to Compel as to that RFP).

7

E.   **Contracts Related to the Local Facility System: RFP No. 3**

**RFP No. 3:** All contracts for services related to holding sentenced individuals in custody of DPSC in local facilities owned and / or operated by local parish sheriff, law enforcement district and / or any private corrections contractor from January 1, 2019 to present.

**Original Response:** Defendants object to this Request on grounds it is over broad and not relevant or proportional to the claims, issues or needs of the case. Plaintiff was a pretrial detainee, not a DPSC sentenced prisoner. In addition, this Request is unduly burdensome and is not limited to the relevant time period of Plaintiff's detention and/or facility, much less the parish in which the facility is located, at issue in Plaintiff's complaint and fails to properly define "contracts for services related to holding sentenced individuals," rendering the Request inappropriately vague. Defendants further object to this Request on grounds it seeks documents already in Plaintiff's counsel's possession. Subject to and without waiving these objections, Defendants refer Plaintiff to documents previously produced to Plaintiff's counsel in the *Murray v. LeBlanc et al*. matter, Civil Action No. 21-592.

**Supplemental Response:** None.

Plaintiff argues that although the *Murray* Docs were responsive, they only held information for a time period that ended in 2021. Plaintiff argues that updated information regarding contracts between DPSC and any entity representing a local facility are relevant to Plaintiff's claims about DPSC's general oversight of failures at local facilities. Defendants note that RFP No. 3 is identical to RFP No. 3 in *Murray* and that they have already produced, in *Murray,* the Cooperative Endeavor Agreements and Contracts for many parishes and facilities, including a 1997 Catahoula Cooperative Endeavor Agreement. Further, Defendants explain that they already referred Plaintiff to the *Murray* Docs and informed Plaintiff that they do not possess further responsive documents as "they no longer utilize the agreements requested." (R. Doc. 52 at 7).

This Court finds that RFP No. 3 is overbroad as it concerns a time period beyond the date Plaintiff was released and seeks contracts regarding facilities other than the CCC. *See Murray v. LeBlanc,* No. CV 21-592-JWD-RLB, 2023 WL 2028927, at *4 (M.D. La. Feb. 15, 2023) (where case involved plaintiffs detained from June 19, 2020 to early 2021, discovery was limited to January 1, 2019 to June 1, 2021 and RFP scope was limited to seek documents concerning facilities at which

8

plaintiffs were detained). RFP No. 3 is also vague and overbroad in that it seeks "all contracts for services" without limitation. Not all services performed related to DPSC sentenced individuals, even just at the CCC, will be relevant to this case. Finally, the Court finds that the production made by the defense as well as the representation that they do not possess further responsive documents, is sufficient.

F.    Incident Reports and Contraband: RFP Nos. 5, 6, 7, 13, 34, 39, 40, 47, 48

**RFP No. 5:** All written procedures or plans for significant unusual occurrences or facility emergencies including riots, deaths, serious illness or injury and assaults or other acts of violence pursuant to BJG I-C-001 from any parish holding DPSC prisoners from January 2019 – present.

**RFP No. 6:** All written reports, notifications, phone messages, emails, text messages, or any other documentation of prisoner deaths, including but not limited to notifications via written form C-05-001-X, from any entity or individual responsible for reporting from any local facility pursuant to BJG IV-C-015 from January 2019 – present.

**RFP No. 7:** All monthly reports of activities to the Chief of Operations pursuant to BJG IV-C-015, IV-C-016 VIII-B-008 and LDPSC regulation C-05-001 / AM-1-4 and all automated reporting by the DPSC Regional Team Leader for the Central Region from January 2019 – present.

**RFP No. 13:** All monthly reports generated pursuant to state statute, including but not limited to LA RS 15:566 A and/or LA RS 15:824 (d)-(e), from any sheriff, law enforcement district, or local parish governing authority and / or any other responsible entity reflecting the number of DPSC prisoners and compensation paid by DPSC from January 1, 2019 to present for any parish where DPSC sentenced people are held.

**RFP No. 34:** All policies and procedures regarding post-critical incident reviews, re-training, meetings, discussions in effect from January 1, 2019, to present at all facilities holding people serving a sentence in the DPSC.

**RFP No. 39:** All policies and procedures for tracking, reporting and responding to critical incidents, suspicious injuries, observed altercations, reports of altercations among prisoners from January 1, 2019 to present at Catahoula Correctional Center.

**RFP No. 40:** All documents, reports, and / or data pertaining to any tracking, reporting, response to critical incidents, suspicious injuries, observed altercations,

9

or reports of altercations among prisoners at Catahoula Correctional Center, from January 1, 2019 to present.

**RFP No. 47:** From any local facility holding people serving a sentence in DPSC custody, all documents reflecting shakedowns from January 1, 2019 to present, including but not limited to: a. shakedown logs; b. contraband reports; c. investigations arising from shakedowns, and d. disciplinary actions taken against inmates and against corrections staff.

**RFP No. 48:** From any local facility holding people serving a sentence in DPSC custody, all documents pertaining to contraband from January 1, 2019 to present, including but not limited to: a. Contraband reports; b. investigations into contraband; c. All disciplinary action taken against inmates and against corrections staff pertaining to contraband; d. All criminal charges filed against inmates pertaining to contraband; e. disposition of any charges filed against inmates; f. All criminal charges filed against corrections staff pertaining to contraband; and g. disposition of any charges filed against corrections staff.

Defendants object to the above on the grounds that: (i) they are over broad and not relevant or proportional to the claims, issues, or needs of the case; (ii) Plaintiff was a pretrial detainee, not a DPSC sentenced prisoner and the BJG are not applicable to pretrial detainees; (iii) they are not limited in time or by facility location; and (iv) they seek documents already in Plaintiff's counsel's possession, the *Murray* Docs. Plaintiff argues Defendants' objections are boilerplate and that the RFPs are relevant to Plaintiff's "allegations of Defendants' failure to investigate known incidents of violence as part of Defendants' failure to reasonably respond to dangerous conditions at CCC." (R. Doc. 51-1 at 9). Plaintiff further argues Defendants' reliance on the *Murray* Docs is unfounded as they do not cover January 1, 2019 to now, or the CCC. *Id.*

Defendants argue that they have adequately responded to (i) RFP No. 5 by providing, in *Murray,* Department Regulation #AM-1-4, dated July 24, 2018, as they have no other responsive documents; (ii) RFP No. 7 by providing, primarily in *Murray*, the BJG Single Month Activity Reports for Catahoula Parish from 2017 through September 2024; and (iii) RFP No. 13 by providing invoicing/audit reports, primarily in *Murray,* for Catahoula Parish for 2021 through October 2024, which covers the relevant time period in this case. Defendants also argue that RFP

10

Nos. 34 and 39 should be directed to the CCC, and that their responses to RFP Nos. 1, 2, 4, and 7 are also responsive to RFP Nos. 6, 34, 39, 40, 47, and 48. Defendants' responses to 1, 2, and 7 are detailed above. In response to RFP No. 4, Defendants provided BJG Monitoring Reports from 2016 to June 29, 2023. The reports for 2021 to 2022 were bates-numbered, but the rest were provided unnumbered in the *Murray* Docs.

To the extent these RFPs seek information related to facilities other than the CCC, the Court concludes that while the information may have some attenuated relevance to Plaintiff's allegations, the RFPs seek information outside the scope of discovery, given that the information sought is not proportional to the needs of this case. Plaintiff's complaint concerns the alleged acts and omissions of Defendants at the CCC. None of the above RFPs, except RFP Nos. 39 and 40, specifically pertain to the CCC; rather, they apply to facilities throughout the state. This Court already held, in *Murray*, that "Defendants have no duty to respond to the extent any discovery seeks information regarding facilities . . . other than the facility at issue in this action." *Murray,* No. 2023 WL 2028927, at *4 (M.D. La. Feb. 15, 2023). Plaintiff was made aware that his discovery requests were very similar to those in *Murray*, and should have appropriately tailored his discovery requests. In the alternative, this would have been appropriate to discuss in a Rule 37 conference. Plaintiff has, however, appropriately focused discovery regarding CCC in other requests and the Court will compel responses to those requests if appropriate. The Court will not, however, compel responses to RFP Nos. 5, 6, 7,[1] 13, 47, or 48 as they are overbroad.

As for RFP Nos. 34, 39, and 40, however, responses to RFP Nos. 39 and 40 will be compelled as these requests were appropriately drafted, and RFP No. 34 will be revised to only seek the requested information regarding the CCC from January 1, 2019 to September 1, 2022.

---

[1] Responses to RFP Nos. 5, 6, and 13 are also not being compelled as these requests are duplicative of RFP No. 10.

11

To the extent any previously produced *Murray* Docs are responsive to RFP's compelled by this Order, the relevant portions shall be identified as responsive to each particular RFP.

### G.     Audits and Compliance with the BJG: RFP Nos. 10, 11, 15, 16, 17, 18, 35

**RFP No. 10:** All documentation, records, meeting minutes, emails, forms, policies, procedures received and / or reviewed related to Catahoula Correctional Center's compliance with Basic Jail Guidelines from January 1, 2019 to present including but not limited: a. Organization and staffing plans b. Annual review of facility staffing plans c. Staff logs d. Facility logs e. Unusual occurrence reports f. Any incidents reportable to DPSC g. All reports related to Offender Population Management h. Detainee and prisoner housing records i. Detainee and prisoner classification records j. Documentation of drug and alcohol testing of detainees and prisoners k. Deaths of detainees or prisoners

**RFP No. 11:** All records, curriculum, power points, meeting minutes, sign in sheets or other documents related to training, supervision, and evaluation of regional Basic Jail Guidelines Team Leaders for each DPSC region, including but not limited to any materials related to conferences for Team Leaders hosted in or around Lake Charles from January 1, 2016 to present.

**RFP No. 15:** All documents, plans, letters, e-mails, meeting minutes, notes, memoranda, voicemails, phone messages, text messages or any other records regarding all facilities DPSC has found in non-compliance with any BJG provision from January 1, 2017 to present.

**RFP No. 16:** All documents, plans, letters, e-mails, meeting minutes, notes, memoranda, voicemails, phone messages, text messages or any other records regarding all plans developed by DPSC, local sheriff's office, parish law enforcement district, the entity operating a facility, and / or any other entity related to the ownership, operation, or custody of people in a facility not in compliance with any BJG provision to bring the facility into compliance from January 1, 2019 to present.

**RFP No. 17:** All documents, plans, letters, e-mails, meeting minutes, notes, memoranda, phone messages, voicemails, text messages or any other records regarding all audits, inspections, reviews, or other efforts undertaken by DPSC to re-assess a facility's BJG compliance after a finding of non-compliance conducted between January 1, 2019 and present.

**RFP No. 18:** All documents, plans, letters, e-mails, meeting minutes, notes, memoranda, phone messages, voicemails, text messages or any other records regarding all studies, consultations, reports, reviews, audits, or any other effort undertaken by DPSC to assess the validity of BJG audits of local facilities.

**RFP No. 35:** All reports, reviews, audits, investigations of all facilities located in Louisiana used to hold pretrial detainees and people in DPSC custody within the last five years including but not limited to: a. All letters of finding issued by the Department of Justice (DOJ); b. All reviews, investigations, and / or letters of finding by the Department of Homeland Security; c. All reviews, audits, and / or technical assistance reports issued by the National Institute of Corrections (NIC); d. All reviews, audits, inspections, and / or correspondence regarding same by the Louisiana State Department of Public Safety and Corrections (DPSC); e. All reviews, audits, inspections, and / or accreditation reports by the National Commission on Correctional Health Care (NCCHC); f. All reviews, audits, inspections, and / or accreditation reports by the American Correctional Association (ACA); and g. All inspections, reports, correspondence, and / or citations by Louisiana State Fire Marshal.

Plaintiff argues that "[i]nformation related to the training of the team leaders who conduct local facility audits, findings of non-compliance, and corrective efforts to bring facilities into compliance . . . are all calculated to lead to admissible evidence establishing Defendants' failures in supervision." (R. Doc. 51-1 at 10). Defendants object to the above on the grounds that (i) they are over broad and not relevant or proportional to the claims, issues, or needs of the case; (ii) the BJG are not applicable to Plaintiff; (iii) they are not limited to the relevant time period or facility; and (iv) responsive documents were provided in *Murray*. Defendants further state that they produced training documents responsive to RFP No. 11 on January 8, 2025, and that their response to RFP No. 4, the BJG Monitoring Reports, is responsive to RFP Nos. 6, 15-18, and 35.

Defendants' objection that the above RFPs are not properly limited to the CCC or the appropriate time period is valid. *See Murray,* No. 2023 WL 2028927, at *4 (M.D. La. Feb. 15, 2023). Once again, requests regarding facilities other than the CCC, in this case, are overbroad. Through the above RFPs, Plaintiff seeks essentially limitless forms of documentation, including, but not limited to, power points, phone calls, investigation files, audits, phone messages, emails, and even text messages regarding BJG compliance at not just the CCC, but also at other facilities throughout Louisiana. The time periods covered are anywhere from 8 years to periods without

13

limitation. Responses to such overbroad requests will not be compelled. The defendants' production is sufficient.

### H. Hospital Routes and Billing Records: RFP Nos. 28, 29, 45, 46, 50, 51

**RFP No. 28:** All policies and procedures regarding outside hospital billing for services to Catahoula Correctional Center, Catahoula Parish Sheriff's Office, Calcasieu Parish Sheriff's Office and/or DPSC from July 1, 2019 to present.

**RFP No. 29:** All bills for medical service provided to Robert Young sent by an outside hospital or medical provider while he was in custody of Catahoula Parish Sheriff's Office and/ or Calcasieu Parish Sheriff's Office.

**RFP No. 45:** All documents pertaining to policy, procedure and practice of escorting prisoners for medical care after altercation with another prisoner at any local facility holding people serving a sentence in DPSC custody from August 1, 2019, to present.

**RFP No. 46:** All documents pertaining to policy, procedure and practice for routing prisoners to the hospital or any other provider for outside medical care at any local facility holding people serving a sentence in DPSC custody from January 1, 2019, to present.

**RFP No. 50:** From any local facility holding sentenced people in DPSC custody, all documents, including medical logs, tier logs, trip sheets, count logs reflecting requests for treatment, treatment, and / or observation of lacerations, puncture wounds, orbital fractures, black eyes, and / or bruising from January 1, 2019 to present.

**RFP No. 51:** From any local facility holding sentenced people in DPSC custody, all trip sheets for emergency or unscheduled trips to any hospital from July 1, 2019 to present.

Defendants object to RFP Nos. 28, 45, and 46 on the grounds that (i) they are over broad and not limited in time or location; (ii). Defendants are not legally responsible for the custody, care, housing, or conditions of confinement of pretrial detainees, such as Plaintiff; (iii) the sheriffs are the final policy makers with respect to the management of jails, control of the inmates of the jail, the employees of the jail, and the daily management and operation of the jail; and (iv) the only responsive documents Defendants possess are the *Murray* Docs. Defendants object to RFP Nos. 29, 50, and 51 also on the above grounds, but instead of directing Plaintiff to

the *Murray* Docs, they explain that the RFPs should be directed to the relevant facilities because Defendant is not in possession of the requested information. In response to RFP No. 29, Defendants have provided a spreadsheet of the medical expenses paid for Plaintiff. Defendants state they do not have Plaintiff's medical records. Defendants have provided no documents responsive to the other above RFPs aside from the *Murray* Docs. Plaintiff argues the information sought by the above should lead to admissible evidence regarding the level of harm caused by the violence present at local facilities, such as the CCC. Plaintiff also notes that a "HIPPA stipulation has been entered in this case which protects medical information for other detainees and prisoners." (R. Doc. 51-1 at 11). This stipulation is present in the record. (R. Doc. 50).

The Court finds that the above RFPs are overbroad in that they seek information regarding local facilities other than the CCC. Many of these documents have nothing to do with Plaintiff or his time spent in CCC. In addition, the categories of documents sought are without limitation, likely requiring a search of every piece of paper at every facility. (R. Doc. 51-3 at 6-7) ("notes, letters, emails, telegrams, memoranda, summaries or records of telephone conversations, personal conversations, interviews, diaries, graphs, reports, notebooks, charts, plans" and so on). RFP Nos. 50 and 51 are especially overbroad because they seek information regarding the medical information of persons other than the Plaintiff that have been detained across Louisiana. Consequently, this Court will only compel responses to RFP Nos. 28, 29, 45, and 46, with those RFPs being revised to concern only the CCC from January 1, 2019 to September 1, 2022. To the extent the *Murray* Docs are the only responsive information Defendants possess, these must be provided in response to the respective RFP Nos., not through a bulk production. With respect to RFP No. 29, if the spreadsheet already provided by Defendants is all the responsive information they possess, they may state as much.

15

I.      **Information Related to Plaintiff and Others: RFP Nos. 36, 49, 52**

**RFP No. 36:** Any document generated related to intake, processing, and classification procedures in effect for when Robert Young, Earldarius Brooks, Zachary Northrup entered Catahoula Correctional Center, including but not limited to: a. Intake and processing documents, forms, program participation, work assignments, questionnaires, classification actions, and / or interview protocols conducted related to classification; b. Master prison form; c. Reports of disciplinary actions, grievances, incidents, or crimes committed while in custody; d. Jail credit letter; e. Documents dealing with arrest information, criminal history, medical history and evaluation, mental health history and evaluation, suicide history and evaluation, bail, release information, program eligibility, housing assignment, and inmate property generated at every stage of intake and processing, incarceration, and release; f. Documents generated by all routine and post incident re-classification procedures, including but not limited to any re-classification documents, forms, questionnaires, interview protocols conducted in reference to re-classification and / or classification review.

**RFP No. 49:** All medical records, including photographs for Robert Young from June 1, 2020 to present.

**RFP No. 52:** For Robert Young, Earldarius Brooks, Zachary Northrup, Larry Smith, Huey Vallaire, Dalton Jaquillard, Montrell Rogers, Christopher Hasty, Kevin Percle, Bobby Buras, and Raymond Howard, please produce the following: a. Inmate folder, including but not limited to booking records, photo, classification, and property receipts; b. all incident reports for all incident; c. all investigation; d. use of force reports; e. disciplinary write ups, reports or disciplinary board records provided to prisoners; f. disciplinary write ups, reports or other action taken against corrections officers or staff related to the incident; g. grievances, internal complaints, requests for administrative reviews, and responses; h. any suits or other filings made by prisoners and documents related to those filings; i. any documents related to any settlement or agreements to resolve any filed complaints made by prisoners; j. trip sheets; k. transfer orders; l. log books and recordings, including video recordings for each area and location where the above listed individuals were incarcerated during any time at Catahoula Correctional Center; m. complete files from any investigation into any incident involving any of the above listed; n. and any e-mails, text messages or other documents referring to these names or individuals.

Defendants object to RFP Nos. 36 and 52 primarily on the grounds that (i) they are overbroad; (ii) Plaintiff is a pretrial detainee, not a DPSC sentenced prisoner; and (iii) Defendants are not responsible for pretrial detainees. Despite these objections, Defendants provided Plaintiff with documents related to Plaintiff, Earldarius Brooks, and Dalton Jaquillard

16

and has promised to "supplement their response should additional responsive documents be obtained relative to other individuals identified." (R. Doc. 52 at 10). With respect to RFP No. 49, Defendants state that they are not in possession of responsive documents such that the request should be directed to the relevant local facility. Plaintiff argues that information regarding the listed individuals is relevant because he has reason to believe they were involved in attacking him or were involved in other violence resulting in injury at the CCC. Plaintiff states that the information sought is essential to Plaintiff's investigation and compilation of evidence related to the "nature of the rampant violence at [the] CCC and the custodial characteristics of people involved." (R. Doc. 51-1 at 11).

This Court finds that, generally, the information sought in the above RFPs is within the scope of discovery. As for RFP No. 36, a response will be compelled as it is appropriate as written due to its focus on only the individuals relevant to Plaintiff's attack and only on documents relating to the CCC. With respect to RFP No. 49, however, as Defendants have already stated they have no responsive information in their possession regarding RFP No. 49, this Court will not compel a response.

Finally, the Court finds RFP No. 52 overly broad as written and disproportionate to the needs of the case, with respect to subparts (l) through (n.). The Court will not compel log books and video recordings for each area and location where the named individuals were incarcerated during *any time* at the CCC. *See Acosta v. Williamson Cnty., Texas,* No. 1-21-CV-615-LY, 2021 WL 4340514, at *3 (W.D. Tex. Sept. 23, 2021) (where plaintiff sued jailers for mistreatment while he was detained, and sought to identify all the jailers through discovery, request for "[c]opies of all documents, emails and electronic files, audio recordings, video recordings, photographs, and digital images evidencing and/or regarding [Plaintiff]'s incarceration in the Williamson County jail on May 27, 2021, as well as all investigations related to such

17

incarceration" was overbroad). Section (l) of RFP No. 52 shall therefore be limited to videos of the individuals' spaces only at the time of Plaintiff's attack.

The request for complete files from any investigation into any incident involving any of the above persons, without limitation, as well as all e-mails, text messages, or other documents referring to the individuals, is overly broad and not proportionate to the needs of the case. Such a search would require a review of every file at the facility for any mention of any individual. The Court is satisfied that the more narrow requests in (a) – (k), and (l) as modified, is sufficient.

### J.      Information related to DPSC Employees: RFP No. 54

**RFP No. 54:** Please produce employment records for the following individuals: a. Seth Smith b. James LeBlanc c. Megan Wintz Kent d. Duane Cambre

**Original Response:** Defendants object to this Request on grounds it is over broad and not relevant or proportional to the claims at issue or needs of the case. Defendants object further to this Request on grounds it seeks private and confidential information regarding current and/or former DPSC employees, of which Defendants are not in custody, possession or control and which may be protected from disclosure. Defendants further object to this Request on grounds it seeks documents already in Plaintiff's counsel's possession. Subject to and without waiving these objections, Defendants refer Plaintiff to documents previously produced to Plaintiff's counsel in the *Murray v. LeBlanc et al*. matter, Civil Action No. 21-592.

**Supplemental Response:** Subject to and without waiving the objections set forth in Defendants' original response above, Defendants refer Plaintiff to the personnel file of Megan Kent, Bates Numbers DPSC-000753 - 001029 and the personnel file of Duane Cambre, Bates Numbers DPSC- 001030-001493. Any confidential information pursuant to La.Rev.Stat. §44:11 et seq. has been redacted.

Plaintiff argues that the named employees, their backgrounds, and their training are relevant to establishing how DPSC oversees local facilities. Defendants state that they (i) produced responsive documents in *Murray*, (ii) produced Megan Wintz Kent and Duane Cambre's records on January 3, 2025, and (iii) will produce the updated records for LeBlanc and

Smith. As Defendants have promised to respond to this RFP and the information sought is relevant, this Court will compel a response to RFP No. 54 as it is written.

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that the Motion to Compel (R. Doc. 51) is **GRANTED IN PART and DENIED IN PART**. Each party shall bear their own costs.[2]

**IT IS FURTHER ORDERED** that Defendants shall provide supplemental responses, where appropriate and as set forth above, within fourteen (14) days of this Order, to RFP Nos. 28-29, 34, 36, 39, 40, 45-46, 52, and 54 in the manner this Order provides.

Signed in Baton Rouge, Louisiana, on March 11, 2025.

                                  **RICHARD L. BOURGEOIS, JR.**
                                  **UNITED STATES MAGISTRATE JUDGE**

---

[2] As the Motion has been granted in part and denied in part, Defendant shall bear its own costs. *Martin v. Affordable Care, LLC*, No. 5:21-CV-00585, 2022 WL 19001030, at *2 (W.D. La. May 27, 2022) (citing Fed. R. Civ. P. 37(a)(5)(C)) (if motion to compel is granted in part and denied in part, court need not award fees but can apportion the expenses between the parties). Further, Plaintiff has not complied with Fed. R. Civ. P. 37.