## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

ROBERT YOUNG                                                 CIVIL ACTION

VERSUS                                                         NO. 23-681-SDD-RLB

JAMES LEBLANC, ET AL.

### ORDER

Before the Court is Plaintiff's First Motion to Compel Responses to First Request for Production from Catahoula Parish Sheriff's Office Defendants. (R. Doc. 77). The motion is opposed. (R. Doc. 87).

**I.  Background**

On August 8, 2023, Plaintiff filed a complaint in this Court against James LeBlanc, in his individual and official capacities as the Secretary of the Louisiana Department of Public Safety and Corrections ("DPSC"),[1] and Seth Smith, in his individual and official capacities as the Chief of Operations of the DPSC (collectively, the "DPSC Defendants"); Tony Mancuso, in his individual and official capacities as the Sheriff of the Calcasieu Parish Sheriff's Office; Toney Edwards, in his individual and official capacities as the Sheriff of Catahoula Parish Sheriff's Office ("CPSO"); Eric Stott, in his individual and official capacities as the current warden of the Catahoula Correctional Center (the "CCC"); Pat Book, the former warden of the CCC, in his individual capacity; CPSO Sgt. Beason in his individual capacity; CPSO Sgt. Prince in his individual capacity; CPSO Sgt. Guthrie in his individual capacity; CPSO Dep. Sanchez in his individual capacity; CPSO Dep. Margie Price in his individual capacity; and unknown CPSO

---

[1] On August 29, 2024, Governor Jeff Landry appointed Gary Westcott as the new Secretary of the DPSC. Gary Westcott is automatically substituted for James LeBlanc as a defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

Deps. Jane and John Does in their individual capacities. (R. Doc. 1). Plaintiff amended his complaint on October 4, 2023, but he removed none of the defendants from the case. (R. Doc. 5).

Plaintiff, a resident of Calcasieu Parish, Louisiana, alleges that because of damage caused during Hurricane Laura in 2020, people arrested for criminal offenses in Calcasieu Parish are not housed in the Calcasieu Parish Jail (a/k/a Calcasieu Detention Center), but are sent to various other facilities in the State, including CCC. (R. Doc. 5 at 7). Plaintiff alleges that he, in particular, "was arrested and booked on non-violent charges in Calcasieu Parish" in April 2022, was transferred to CCC on April 19, 2022, and then was "brutally attacked on August 8, 2022, by violent DPSC inmates with whom he should not have been housed because of their different legal status" (*i.e.*, pretrial detainee v. sentenced inmates). (R. Doc. 5 at 7). In general, Plaintiff alleges that while the CPSO has responsibility over both pretrial detainees and sentenced inmates, the defendants have all failed to ensure that CCC developed and implemented an adequate classification plan or appropriate staffing and oversight as required by the applicable Basic Jail Guidelines. (R. Doc. 5 at 6-7, 22-23).

Plaintiff has brought a 42 U.S.C. § 1983 action against the above defendants for alleged 8th and 14th Amendment violations that he alleges occurred while he was a pretrial detainee at the CCC from April 19, 2022 to August 8, 2022. (R. Doc. 5 at 7). Plaintiff alleges that two CCC corrections officers failed to intervene when he was attacked by other inmates. Based on this allegation, and others, Plaintiff argues that the defendants were negligent under state law and that LeBlanc and Smith were responsible for the acts and omissions of the CCC corrections officers. Plaintiff seeks declaratory relief, injunctive relief, attorneys' fees, and damages.

The instant Motion to Compel concerns requests for production served on September 11, 2024 (R. Doc. 77-3), to which the CPSO Defendants provided responses (R. Doc. 77-3). Plaintiff now seeks the production of the following information:

- Video of attacks on Robert Young, Larry Smith, Huey Vallaire, Christopher Hasty, Dalton Jaquillard, Montrell Rogers (responsive to Request for Production No. 56);

- Complete 2019, 2021, 2022, 2023 unusual occurrence reports (UORs), investigations and CPSO case logs (responsive to Request for Production Nos. 3, 25, 27, 33, 34, 36, 41, 42, 55, 56);

- 2022 Logbooks (responsive to Request for Production Nos. 2, 8, 45);

- Prisoner Housing Agreements with other parishes including Calcasieu Parish Sheriff (responsive to Request for Production No. 18); and

- Records reflecting requests for treatment and observation of injuries (responsive to Request for Production Nos. 44, 39, 40, 46).

(R. Doc. 77 at 2-3). There is no dispute regarding whether the documents and information sought by this motion would fall within the scope of discovery. Plaintiff instead argues that, based on deposition testimony and other documents produced in this action, "Plaintiff has reason to believe that these requested materials are within the possession and control of Catahoula Parish Sheriff's Department." (R. Doc. 77-1 at 3).

In other words, Plaintiff is effectively seeking a ruling that the CPSO Defendants have failed to provide certain documents and information responsive to one of various requests for production. In opposing the motion, the CPSO Defendants represent that they have produced 31,000 pages of responsive documents, have produced all responsive documents available to them, and have otherwise complied with the Federal Rules of Civil Procedure. (R. Doc. 87).

## II. Law and Analysis

### A. Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

A party must respond or object to a request for production within 30 days after service of the discovery. *See* Fed. R. Civ. P. 34(b)(2)(A). This default date may be modified by stipulation between the parties. Fed. R. Civ. P. 29(b). If a party fails to respond fully to discovery requests made pursuant to Rule 34 in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

### B. Local Rule 37

"Motions addressed to issues concerning discovery propounded under Fed. R. Civ. P. 33, 34, 36 and 37 must quote verbatim each interrogatory, request for production, or request for admission to which the motion is addressed, followed immediately by the verbatim response or objection which provided thereto." LR 37.

Plaintiff did not comply with Local Rule 37. There is no dispute, however, that the specific documents and information sought are responsive to certain requests for production and otherwise fall within the scope of discovery. Accordingly, the Court will address the issues raised in this motion without reference to particular requests for production or responses.

### C. Analysis

#### 1. Videos of Attacks

Plaintiff represents that multiple witnesses and defendants have testified that there was a video of the attack on Plaintiff because when "serious incidents resulting in hospitalization occurred, video was reviewed and saved" by the CPSO Defendants. (R. Doc. 77-1 at 4).

In response, the CPSO Defendants represent that notwithstanding the foregoing, "the fact remains that the defendants have been unable [to] locate any video footage of the altercation at

5

issue despite having searched the [CCC] records, medical storage devices in the facility's security office, and the storage buildings where archived records are maintained." (R. Doc. 87 at 2).

These representations support a finding that the CPSO Defendants have failed to locate any of the sought video recordings after conducting a diligent search. There is nothing more to compel.

### 2.    Unusual Occurrence Reports (UORs)

Plaintiff represents that multiple witnesses and defendants have testified that unusual occurrence reports "were the mechanism by which altercations and injuries were documents and reported to supervisors," and that case logs would indicate the number of matters requiring investigation. (R. Doc. 77-1 at 5). Plaintiff represents that the CPSO Defendants have only produced a portion of unusual occurrence reports. Specifically, the production has not included any from 2022 or earlier (except for the two 2022 unusual occurrence reports concerning the attack on Plaintiff). (R. Doc. 77-1 at 5; *See* R. Doc. 77-11).

In response, the CPSO Defendants state the following:

> UORs at CCC are typed, printed, and maintained in hard copy. Archived UORs are placed in boxes which are supposed to be stored in storage buildings on the facility grounds until they are purged. Those buildings have been searched, and Defendants have not found archived UORs preceding 2023.

(R. Doc. 87 at 2).

These representations support a finding that the CPSO Defendants have failed to locate any additional unusual occurrence reports after conducting a diligent search. It appears that the 2022 unusual occurrence reports concerning the attack on Plaintiff were preserved pursuant to a previous public records request. There is nothing more to compel.

### 3. Case Logs

Plaintiff seeks the production of "case logs" identified by Detective Dewain Littleton at his deposition. (R. Doc. 77-1 at 6; *see* R. Doc. 77-12).

The CPSO Defendants have explained that these case logs are maintained by Detective Littleton at the CPSO on an electronic spreadsheet that goes back to December 25, 2022, but has been maintained by Detective Littleton since late 2023 or 2024. (R. Doc. 87 at 2). While this version of the log has been produced, Detective Littleton "believes that there may have been a prior version or versions of the spreadsheet maintained by his predecessors, but he does not have it and could not locate it." (R. Doc.87 at 2).

These representations support a finding that the CPSO Defendants have produced the specific case logs identified by Detective Littleton at his deposition.

### 4. Logbooks

Plaintiff represents that while a limited number of logbooks have been produced, none have been produced in full for 2022 (with the exception of two pages concerning Plaintiff). (R. Doc. 77-1 at 6; *see* R. Doc. 77-13).

In response, the CPSO Defendants state that they have "searched the storage building where prior years' logbooks are maintained in bankers' boxes" and have produced all responsive logbooks that have been located. (R. Doc. 87 at 2-3). The CPSO Defendants further state that it appears that "the missing logbooks were likely destroyed by water damage" and, regardless, "cannot be located." (R. Doc. 87 at 3), Finally, the CPSO Defendants explain that they produced copies of logbook entries reflecting the instant incident because they were "photocopied and maintained in response to a public records request." (R. Doc. 87 at 3).

These representations support a finding that the CPSO Defendants have failed to locate any additional logbooks after conducting a diligent search. There is nothing more to compel.

### 5. Prisoner Housing Agreements

Plaintiff, who has received two distinct versions of the Prisoner Housing Agreement from the Calcasieu Parish Sherriff's Office, now seeks the production of the specific version of the Prisoner Housing Agreement that was in the CPSO's possession. (R. Doc. 77-1 at 6).

The CPSO Defendants represent that the Prisoner Housing Agreement would be maintained in the CCC administrative offices, but they were unable to locate a version of the agreement (at either the CCC or the CPSO) reflecting a warden since the CPSO took control of the facility in 2021. (R. Doc. 87 at 3). It appears that the most recent version produced in discovery by the Calcasieu Parish Sherriff's Office was signed in 2020 by former CCC Warden Sherman Ford, who is now deceased. The CPSO Defendants represent that they have not located any other Prisoner Housing Agreements for production.

These representations support a finding that the CPSO Defendants have failed to locate any additional versions of the Prisoner Housing Agreement for production after conducting a diligent search. There is nothing more to compel.

### 6. Requests for Treatment

Finally, Plaintiff is seeking the production of "nurses' notes, including evaluations of people sent for hospital care," that would be entered into the jail management system. (R. Doc. 77-1 at 6). After receiving from Plaintiff a list of inmates and the dates of corresponding nurses' notes, the CPSO Defendants produced the requested nurse's notes. (R. Doc. 87 at 3). Accordingly, it appears that this issue is moot.

### III. Conclusion

In conclusion, the Court is satisfied, for the purposes of the instant Motion to Compel, that the CPSO Defendants have conducted a diligent search for the requested responsive documents and has produced what it has located. The CPSO Defendants are reminded that they are under a continuing duty to supplement their disclosures and discovery responses should they determine that a disclosure or response was incomplete or incorrect. *See* Fed. R. Civ. P. 26(e)(1)(A).

Furthermore, nothing in this Order shall preclude Plaintiff from seeking, from the district judge before trial, an adverse inference instruction based on alleged spoliation of evidence for failure to preserve any of the foregoing responsive documents and information.

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's First Motion to Compel Responses to First Request for Production from Catahoula Parish Sheriff's Office Defendants (R. Doc. 77) is **DENIED**. The parties shall bear their own costs.

Signed in Baton Rouge, Louisiana, on June 11, 2025.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**