**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| ROBERT YOUNG<br><br>Plaintiff<br><br>v.<br><br>JAMES LEBLANC, SECRETARY OF DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, et al,<br><br>Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Civil Docket Number:<br>3:23-cv-681-SDD-RLB<br><br>JUDGE:<br>SHELLY D. DICK<br><br>MAGISTRATE:<br>RICHARD L. BOURGEOIS |

## PLAINTIFF'S STATEMENT OF UNCONTESTED MATERIAL FACTS

Pursuant to Local Civil Rule 56(a), Plaintiff Robert Young, through undersigned counsel, submits that the following material facts are uncontested for purposes of his Motion for Summary Judgment against Defendant Calcasieu Parish Sheriff Tony Mancuso:

1. Sheriff Mancuso chose to hold Calcasieu detainees at the Catahoula Correctional Center ("CCC").[1]

2. Young was incarcerated at CCC twice, first from October 2020 to June 2021, and second beginning in April 2022.[2]

3. Both times Young was incarcerated at CCC, he was arrested in Calcasieu Parish, booked by the Calcasieu Parish Sheriff's Office ("CPSO"), and then transferred to CCC to be held as a pretrial detainee.[3]

[1] Exhibit 7, Prisoner Housing Agreement at 1.
[2] Exhibit 1, Deposition of Robert Young at 34:25-35:9.
[3] Exhibit 1, Deposition of Robert Young at 23:16-18, 24:12-14.

4. Both times, he was incarcerated at the expense of Calcasieu Parish and remained in the legal custody of the Calcasieu Parish Sheriff's Office.[4]

5. During Plaintiff Young's first period of incarceration at CCC, from October 2020 to June of 2021, he was stabbed by another inmate with an ice pick, and an L was carved into his head.[5]

6. After returning to CCC in April 2022, Plaintiff Young was consistently extorted, and he was beaten at least four times by another prisoner.[6]

7. On August 8, 2022, Plaintiff Young was stabbed and burned with boiling water by two other prisoners.[7]

8. The August 8, 2022 attack on Plaintiff Young resulted in serious injuries that required a four-day hospital stay to treat a pneumothorax (partially collapsed lung), severe burns, a corneal abrasion, and multiple stab wounds.[8]

9. Plaintiff Young alerted Sheriff Mancuso, through his employees, of the violence prior to his return to CCC in April 2022.[9]

10. On October 16, 2020, CPSO and Catahoula Parish Sheriff's Office signed a Prisoner Housing Agreement ("PHA") to govern an indefinite arrangement wherein Calcasieu detainees would be held at CCC.[10]

---

[4] Exhibit 2, Billing Records from CCC to CPSO for Robert Young.
[5] Id. at 46:9-24.
[6] Id. at 47:16-48:25; 49:1-3; 49:5-12; 52:3-8; 54:11-57:24.
[7] Id. at 54:11-57:24; Exhibit 3, Zachary Northrup Unusual Occurrence Report; Exhibit 4, Earldarrius Brooks Unusual Occurrence Report.
[8] Exhibit 5, Medical Records of Robert Young; Exhibit 6, Deposition of Robin Perrin at 101:1-19. The facts surrounding the stabbing and burning of Plaintiff Young are set forth in more detail in Plaintiff's Motion for Summary judgment directed at the Louisiana Department of Public Safety and Corrections (DPSC).
[9] Id. at 131:23-24, 132:3-5.
[10] Exhibit 7, Prisoner Housing Agreement, at 1.

11. The PHA provides that "CPSO has the sole authority to release a pre-trial or sentenced prisoner not in the custody of the Dept. of Public Safety."[11]

12. The PHA further requires that CCC "meet the minimum standards as outlined in the LSA/DOC Basic Jail Guidelines or satisfy the American Correctional Association Standards . . . [and] must comply with all applicable federal, state, or local laws and regulations."[12]

13. The PHA also features several reporting requirements wherein the housing agency must notify CPSO of particular categories of incidents, including unauthorized release,[13] escapes (or attempts)[14], hospitalizations,[15] and criminal charges filed against a prisoner or of an activity that would likely result in litigation.[16]

14. Finally, the PHA includes provisions that allow for modifications or termination of the agreement after reasonable notice giving "the necessary time to make arrangements for the housing and transfer of the inmates in question."[17]

15. CPSO took no steps to determine if CCC met minimum correctional standards, including determining if CCC had a functional classification system, adequate staffing, or adequate medical care. [18]

16. CPSO staff did not physically visit CCC in response to particular incidents or to otherwise monitor the conditions at the facility.[19]

---

[11] Id. at 3.
[12] Id. at 2.
[13] Id.
[14] Id.
[15] Id. at 2, 4.
[16] Id. at 3.
[17] Id. at 2, 6.
[18] Exhibit 9, 30(b)(6) Deposition of Christopher Domingue at 96:3-8, 105:1-8, 106:9-16.
[19] Id. at 194:24-195:3; 176:1-8; Exhibit 1, Deposition of Robert Young at 133:1-10.

17. Inmate fights were required to be reported to CPSO "if it involved an injury;"[20] Defendant Mancuso never initiated discussions nor developed documented standards with CCC officials to determine the types of injuries or the severity thereof that would require notification.[21]

18. CPSO failed to produce any evidence of notification or investigation of a fatal, subsequently prosecuted homicide[22] of Calcasieu Prisoner Kody Ardoin; nor did CPSO receive notification of the August 8, 2022 attack on Plaintiff Young that precipitated the instant case.[23]

19. Upon finding out that he and other Calcasieu detainees were being transferred back to CCC, Plaintiff Young alerted Defendant Mancuso, by way of CPSO staff, regarding the incessant violence at that facility.[24]

20. By way of informal internal policy, PHA-required notifications were supposed to be provided to Bonding Sergeant Michael Hollan by CCC Assistant Warden Stott; if available, Defendant Stott would include CCC's incident report and any hospital records stemming from the event.[25]

21. After receiving a notification and attendant documentation from Assistant Warden Stott, Sergeant Hollan would generate a separate incident report and save all the documentation in CPSO's jail management system.[26]

22. In the event of violence-induced hospitalizations, Defendant Sheriff Mancuso and other CPSO command staff were supposed to be verbally informed after initial notification was received.[27]

---

[20] Exhibit 9, 30(b)(6) Deposition of Christopher Domingue at 165:20;
[21] Id. at 191:20-192:8.
[22] Exhibit 12, Records Related to homicide of Larry Smith by Kody Ardoin.
[23] Exhibit 9, 30(b)(6) Deposition of Christopher Domingue at 193:17-22; 195:18-196:10.
[24] Exhibit 1, Deposition of Robert Young at 131:23-24, 132:3-5.
[25] Exhibit 9, 30(b)(6) Deposition of Christopher Domingue at 162:2-163:1; 186:6-15.
[26] Id. at 162:20-163:1.
[27] Id. at 170:21-24, 167:1-14.

23. Over the course of 2021 and 2022, Defendant Mancuso received several PHA-required notifications stemming from violence-induced hospitalizations of Calcasieu detainees.[28]

24. When notified of violence at CCC, CPSO command staff's follow-up was limited to calling Assistant Warden Stott if there were questions; CPSO had no formal policy for affirmative investigation when a prisoner in its custody was injured or involved in an altercation.[29]

25. On January 20, 2021, Catahoula Parish Sheriff Toney Edwards wrote a letter to Defendant Sheriff Mancuso requesting CPSO's commitment to continue housing Calcasieu detainees at CCC; Defendant Mancuso stated his intention to continue housing detainees at CCC "for the continuous future."[30]

26. From September 2021 to September 2022, Defendant Sheriff Mancuso held hundreds of Calcasieu detainees at CCC, paying over 20 million dollars to CCC in the course of the year.[31]

Respectfully submitted,

/s/ Jack Stephens
**ELIZABETH CUMMING (**Bar Roll No. 31685), T.A.
**EMILY WASHINGTON** (Bar Roll No. 34143)
**JACK STEPHENS** (Bar Roll No. 41468)
Roderick and Solange MacArthur Justice Center
4400 S. Carrollton Ave.
New Orleans, LA 70119
Phone: (504) 620-2259
Fax: (504) 208-3133
elizabeth.cumming@macarthurjustice.org
emily.washingting@macarthurjustice.org

-AND-

[28] Exhibit 13, CPSO Hospitalization Notifications.
[29] Exhibit 9, 30(b)(6) Deposition of Christopher Domingue at 174:18-20.
[30] Exhibit 15, Correspondence Between Sheriff Toney Edwards and Sheriff Mancuso at 1-2.
[31] Exhibit 16, CCC Billing Invoices from September 2021 to September 2022.

/s/ Stephen J. Haedicke

**STEPHEN J. HAEDICKE** (Bar Roll No. 30537)
Law Office of Stephen J. Haedicke
1040 Saint Ferdinand St.
New Orleans, LA 70117
Phone: (504) 291-6999
stephen@haedickelaw.com

Dated: June 23, 2025