**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

ROBERT YOUNG                                    CIVIL ACTION

VERSUS                                          23-681-SDD-RLB

JAMES LEBLANC, ET AL.

**RULING**

Defendants James LeBlanc ("LeBlanc") and Seth Smith ("Smith") move for judgment as a matter of law under Federal Rule of Civil Procedure ("Rule") 50(b), or alternatively for a new trial or amendment of judgment under Rule 59.[1] Plaintiff Robert Young ("Plaintiff") opposes the Motion.[2] Defendants filed a Reply.[3] For the reasons that follow, the Motion will be denied.

**I.    BACKGROUND**

While being held as a pretrial detainee at Catahoula Correctional Center ("CCC"), Plaintiff was attacked by two inmates who threw boiling water on him and stabbed him. One of his attackers was a convicted prisoner. Plaintiff filed this § 1983 lawsuit against several defendants including James LeBlanc, Secretary of the Louisiana Department of Public Safety and Corrections ("DPSC"), and Seth Smith, Chief of Operations of DPSC (collectively, "DPSC Defendants"). He alleged violations of his rights under the Fourteenth Amendment, arguing his attack was attributable to unconstitutional conditions of confinement at CCC and episodic acts or omissions of the DPSC Defendants as

---

[1] Rec. Doc. 206.
[2] Rec. Doc. 225.
[3] Rec. Doc. 228.

supervisors.[4] Principally, Plaintiff contended that as a pretrial detainee, he should not have been housed with convicted prisoners.

The case proceeded to trial. The jury found that DPSC Defendants, in their individual capacities, violated Plaintiff's Fourteenth Amendment rights both by creating conditions of confinement at CCC which resulted in impermissible punishment, and as supervisors by implementing or failing to implement policies and procedures which resulted in impermissible punishment.[5] The jury also found that neither of the DPSC Defendants were entitled to qualified immunity.[6] Plaintiff was awarded $50,000 in compensatory damages, and $100,000 in punitive damages against each Smith and LeBlanc.[7]

DPSC Defendants now move for judgment as a matter of law ("JMOL") under Rule 50(b) on several grounds, both legal and factual. Alternatively, DPSC Defendants move for a new trial under Rule 59(a), or to amend the judgment under Rule 59(e).[8]

## II.    LAW AND ANALYSIS

### A. Legal Standards

#### 1.  Rule 50 Judgment as a Matter of Law

A party may move for judgment as a matter of law ("JMOL") under Rule 50(a) after the nonmovant "has been fully heard on an issue during a jury trial."[9] The motion "may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment."[10] If the

---

[4] Rec. Doc. 5.
[5] Rec. Doc. 196.
[6] *Id.*
[7] *Id.*
[8] Citations will be made to Rec. Doc. 219-1, the substituted memorandum in support of the Motion.
[9] Fed. R. Civ. P. 50(a).
[10] *Id.*

Rule 50(a) motion is denied, the movant may renew the motion after trial under Rule 50(b).

"A motion for judgment as a matter of law ... in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict."[11] Such a motion may be granted only if the Court "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party" on a particular issue.[12] "Motions for judgment as a matter of law should be granted only if 'the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict.'"[13] "On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied."[14] For these motions, the Court "consider[s] all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party."[15]

### 2.  Rule 59(a) Motion for New Trial

Rule 59(a) provides that a new trial may be granted "on all or some of the issues ... after a jury trial, for any reason for which a new trial has heretofore been granted in an action in federal court."[16] Although Rule 59(a) does not list specific grounds for a new trial, the Fifth Circuit has held that a new trial may be granted if "the verdict is against the

---

[11] *Harrington v. Harris*, 118 F.3d 359, 367 (5th Cir. 1997) (quoting *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir. 1995)).

[12] Fed. R. Civ. P. 50(a).

[13] *College Network, Inc. v. Moore Educ. Publishers, Inc.,* 378 F. App'x. 403, 407 (5th Cir. 2010) (quoting *Brown v. Bryan Cty.*, 219 F.3d 450, 456 (5th Cir. 2000)).

[14] *Id.*

[15] *Brown*, 219 F.3d at 456 (citing *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996)).

[16] Fed. R. Civ. P. 59(a)(1).

weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course."[17] However, it is within the "sound discretion of the trial court" whether to grant or deny a motion for new trial.[18]

### 3. Rule 59(e) Motion to Alter or Amend Judgment

"Rule 59(e) relief is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact."[19] "A court should not grant Rule 59(e) relief on the basis of 'arguments which could, and should, have been made before the judgment issued,' and should not allow a case to be argued under a new legal theory."[20]

A Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."[21] "'Manifest error' is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'"[22] As this Court has stated, "[w]hile the district courts do have 'considerable discretion in deciding whether to grant or deny a motion to alter a judgment,' denial of Rule 59(e) motions to alter or amend is favored."[23] A motion to alter or amend is "an extraordinary remedy that should be used sparingly."[24]

---

[17] *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985) (citations omitted).

[18] *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998).

[19] *McAlpine v. Porsche Cars N. Am. Inc.*, 428 F. App'x 261, 263 (5th Cir. 2010) (per curiam) (citing *Schiller v. Physicians Res. Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003)).

[20] *Id.* (quoting *Simon v. United States,* 891 F.2d 1154, 1159 (5th Cir.1990)).

[21] *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (citing *Simon,* 891 F.2d at 1159).

[22] *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004)).

[23] *Brown v. Louisiana State Senate*, No. CIV.A. 11-620, 2013 WL 5603232, at *1 (M.D. La. Oct. 11, 2013) (quoting *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995)).

[24] *Rollins v. Home Depot USA*, 8 F.4th 393, 396 (5th Cir. 2021) (quoting *Templet*, 367 F.3d at 479).

**B. Discussion**

The Court will address DPSC Defendants' several arguments in turn.

**1. Damages and Offset**

Before trial, Plaintiff settled his claims against both the Catahoula Parish Sheriff and the Calcasieu Parish Sheriff.[25] At trial, the Court instructed the jury about the settlements as follows: "Defendants Calcasieu Parish Sheriff and the Catahoula Parish Sherriff have been dismissed after reaching a settlement with the Plaintiff. You are not to consider this fact in your deliberations. The question before you is whether the defendants, LeBlanc and/or Smith, are liable, and if so, what amount of damages, if any, should be awarded to the Plaintiff."[26]

Plaintiff settled with the Calcasieu Parish Sheriff for $25,000, and the Catahoula Parish Sheriff for $90,000.[27] Citing no law or evidence (other than the settlement documents themselves), DPSC Defendants say that the full amount of these settlements should be applied toward satisfaction of the verdict returned against them.[28] Plaintiff disagrees, asserting the following arguments: 1) comparative fault is not a valid defense in cases involving constitutional injury; 2) the settlements against the two sheriff's office defendants included compensation for matters separate from the jury's award of compensatory damages (e.g., state tort claims and attorney fees); and 3) based on the Court's instruction quoted above, the jury was aware of the settlements, and the verdict

---

[25] Rec. Docs. 206-2, 206-3.
[26] Rec. Doc. 218, trial transcript 12/11/2025, at 100:21–101:2.
[27] Rec. Docs. 206-2, 206-3.
[28] Rec. Doc. 219-1, pp. 9–11.

form tasked the jury with determining compensatory damages caused by DPSC Defendants specifically.[29]

In *Dobson v. Camden*, the Fifth Circuit sitting en banc considered "what rule should apply in the case of liability of a defendant in a federal civil rights action after prior settlement with a joint tortfeasor."[30] Dobson sued Officer Camden under § 1983 for excessive force.[31] He later amended his complaint to add claims against the owner of the restaurant where he was arrested ("Denny's") under state law for false arrest and malicious prosecution, and for conspiracy to violate his constitutional rights under § 1983.[32] Denny's settled with Dobson, paying $30,000 for a complete release.[33] At trial, the jury found Officer Camden liable for excessive force and awarded $25,000 in compensatory damages.[34] The district court reduced the verdict to $15,851.97 to reflect the portion of the settlement that resolved the § 1983 conspiracy claim against Denny's.[35] On appeal, Camden argued that the verdict should have been reduced by the full amount of the $30,000 settlement, leaving Dobson with an award of zero dollars. The original Fifth Circuit panel held that credit should be allowed for the settlement of a joint tortfeasor only in proportion to the amount of the injury caused by the settling tortfeasor.[36] The panel remanded the case to the district court for a determination of relative liability.[37] On rehearing by the circuit en banc, however, the court found that no credit for the settlement should have been provided to Officer Camden because there was no basis for joint liability

---

[29] Rec. Doc. 225, pp. 39–41. *See also* Rec. Doc. 196.
[30] *Dobson v. Camden ("Dobson II")*, 725 F.2d 1003, 1004 (5th Cir. 1984) (on rehearing).
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Dobson v. Camden*, 705 F.2d 759 (5th Cir. 1983).
[37] *Id.* at 770.

between Officer Camden and Denny's for the damages awarded by the jury.[38] The court found that "no theory of tort law exists to impose responsibility on Denny's for the excessive force used by [Officer] Camden," and that there was no allegation or suggestion that Denny's personnel conspired to inflict bodily injury on Dobson.[39] Because the jury's excessive-force verdict against Officer Camden compensated injuries in which Denny's played no role, the court found no basis for any credit for the settlement.[40] With no basis for joint liability, the court "conclude[d] that this is an inappropriate case for resolution of the stated issue"; i.e., "what rule should apply in the case of liability of a defendant in a federal civil rights action after prior settlement with a joint tortfeasor."[41]

Under the reasoning of *Dobson II*, in order to be entitled to any credit for the prior settlements in this case, DPSC Defendants would need to show that the settling defendants are jointly liable for the injuries for which the jury awarded damages, and if so, in what proportions.[42] Their brief contains no argument in this regard, simply concluding without explanation that the verdict should be reduced by the full $115,000 combined value of the two settlements. In response, Plaintiff argues that "[t]he settlements are not only for [Plaintiff's] constitutional injury, but also for state tort claims and substantial attorneys' fees and costs incurred litigating those portions of the case."[43] Thus, Plaintiff maintains that DPSC Defendants' "assumption that the total lump sum of

---

[38] *Dobson II*, 725 F.2d at 1004.

[39] *Id.* at 1005.

[40] *Id.* at 1005–06.

[41] *Id.* at 1004.

[42] Since the Circuit in *Dobson II* found no joint liability, the mechanics of granting an offset in a case where joint liability is demonstrated appears to be left open by the opinion.

[43] Rec. Doc. 225, p. 40.

settlement has compensated Plaintiff for his constitutional injury is entirely unreasonable."[44]

It is DPSC Defendants' burden to show that they are entitled to an offset, and if so, in what amount. In the absence of any evidentiary basis or legal argument on the issue, the Court denies the request for credit for the full amount of the two prior settlements.

### 2. Amount of Compensatory Damages

DPSC Defendants argue the jury's $50,000 compensatory damages award is unsupported for two reasons: 1) there was no expert or medical testimony to support Plaintiff's claimed emotional harms, including PTSD; and 2) Plaintiff returned to employment after his injuries, "which undermines the extent of ongoing impairment suggested by Plaintiff's damages presentation."[45] DPSC Defendants request either a new trial on compensatory damages or an amendment of the judgment "to reduce the compensatory award to a legally supportable amount."[46]

The Court will deny DPSC Defendants' request for a reduction of the compensatory damages award. The jury was instructed that, "if Plaintiff wins, he is entitled to compensatory damages for the physical injury, pain and suffering and the mental anguish that he has suffered because of either Defendant LeBlanc or Smith's wrongful conduct."[47] As Plaintiff points out, the Fifth Circuit has explained that, "[w]hen a damage award includes recovery for pain and suffering, which are 'to a large degree, not susceptible to monetary quantification,' the jury 'has especially broad leeway.'"[48] Plaintiff offered ample

---

[44] *Id.*
[45] Rec. Doc. 219-1, p. 10.
[46] *Id.* at pp. 10–11.
[47] Rec. Doc. 218, trial transcript 12/11/2025, at 110:16–19.
[48] *Cowart v. Erwin*, 837 F.3d 444, 455 (5th Cir. 2016) (quoting *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1141 (5th Cir. 1991)).

evidence of the physical and emotional injury he suffered from his attack. Plaintiff testified that his attackers burned his face and eyes with hot water and then stabbed him in the back five times with a four-to-six-inch icepick-like "shank."[49] In the immediate aftermath of the attack, Plaintiff testified that he felt like he was drowning, had difficulty breathing, and thought he was going to die.[50] Additional evidence reflected that Plaintiff's lung collapsed five percent, and that his injuries required five days of hospitalization.[51] In light of this evidence, DPSC Defendants fail to show that the jury's award is against the weight of the evidence or manifestly erroneous to support Rule 59 relief. Further, Plaintiff's subsequent return to employment does not negate the severity of the injuries he sustained, and DPSC Defendants cite no legal authority that would require expert evidence to support the award in this case.[52] Accordingly, DPSC Defendants' Motion challenging the amount of compensatory damages awarded is denied.

### 3. Punitive Damages

Punitive damages may be awarded in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."[53] DPSC Defendants move for a JMOL under Rule 50(b) vacating punitive damages because "[n]o witness testified that either Defendant acted with an evil motive or intent, and the proof likewise did not

---

[49] Rec. Doc. 217, trial transcript 12/10/2025, at 177:25–178:16.
[50] *Id.* at 180:14–181:5.
[51] *Id.* at 151:2–7, 182:6–8.
[52] *See Johnson v. Hankins*, 582 F. App'x 306, 308 (5th Cir. 2014) (upholding award for mental pain and suffering: "Some degree of mental pain and suffering can reasonably be expected to accompany an unprovoked beating that results in bruising and aggravation of a preexisting leg injury. No additional specific evidence of a mental injury was required[.]").
[53] *Smith v. Wade*, 461 U.S. 30, 56 (1983).

establish reckless or callous indifference."[54] Alternatively, they request a new trial under Rule 59(a) or amendment of judgment vacating the punitive damages under Rule 59(e).[55]

Plaintiff is correct in highlighting the similarity of the standards for deliberate indifference and punitive damages. Punitive damages may be awarded where a defendant demonstrates "reckless or callous indifference to a person's constitutional rights," which "requires recklessness in its subjective form, i.e. a subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations."[56] Similarly, "[s]howing deliberate indifference requires showing a defendant was subjectively aware that 'a substantial risk of serious harm' existed and was indifferent to it."[57] Courts have observed that "[t]he callous indifference required for punitive damages is essentially the same as the deliberate indifference required for a finding of liability" in a § 1983 action.[58] Moreover, in *Smith v. Wade*, the Supreme Court stated that "[t]here has never been any general common-law rule that the threshold for punitive damages must always be higher than that for compensatory liability," and therefore "in situations where the standard for compensatory liability is as high as or higher than the usual threshold for punitive damages, most courts will permit awards of punitive damages without requiring any extra showing."[59]

---

[54] Rec. Doc. 219-1, pp. 9–10.

[55] *Id.*

[56] *Moore v. LaSalle Mgmt. Co., L.L.C.*, 41 F.4th 493, 513 (5th Cir. 2022) (quoting *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1015 (5th Cir. 2003)) (internal quotation marks omitted).

[57] *Id.* (quoting *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020)).

[58] *Evans v. Lopinto*, No. CV 18-8972, 2022 WL 1748356, at *13 (E.D. La. May 31, 2022) (quoting *Cooper v. Dyke*, 814 F.2d 941, 948 (4th Cir. 1987)) (citing *Castro v. Cnty of Los Angeles*, 797 F.3d 654, 669–670 (9th Cir. 2015), *on reh'g* 833 F.3d 1060 (9th Cir. 2016) (en banc) (incorporating "by reference the three-judge panel's opinion as to punitive damages.")). Plaintiff cites several additional cases where courts have made this observation, including: *Morris v. Bland*, 666 F. App'x 233, 240 (4th Cir. 2016); *Hill v. Marshall*, 962 F.2d 1209, 1217 (6th Cir. 1992); *Rowlett v. Anheuser–Busch, Inc.,* 832 F.2d 194, 205 (1st Cir.1987); *Walsh v. Mellas,* 837 F.2d 789, 801 (7th Cir. 1988); and *McCollum v. Livingston*, No. 4:14-CV-3253, 2017 WL 608665, at *31 (S.D. Tex. Feb. 3, 2017).

[59] *Smith*, 461 U.S. at 53.

Based on the evidence presented at trial and after being instructed on the applicable law, the jury found that both DPSC Defendants violated Plaintiff's rights as supervisors "by implementing or failing to implement policies and procedures, resulting in the impermissible punishment of Plaintiff[.]"[60] That verdict necessarily entailed a finding of deliberate indifference.[61] As discussed in more detail below, the Court finds that the jury had a sufficient evidentiary basis to support the finding of deliberate indifference, and the verdict was not against the weight of the evidence or manifestly erroneous. In the words of the Fifth Circuit, "the discretionary moral judgment of whether to award punitive damages when the legal threshold is met belongs to the jury, not this court."[62] Therefore, DPSC Defendants have not met the standard for relief under Rule 50(b) or Rule 59, and the Motion will be denied with respect to punitive damages.

### 4.  Individual-Capacity Conditions-of-Confinement

DPSC Defendants argue that the conditions-of-confinement verdict cannot stand because such claims are not legally cognizable against actors in their individual capacities.[63] They request Rule 59 relief on this basis. In response, Plaintiff contends that this argument 1) was never raised before and is therefore waived, and 2) lacks merit.[64]

Motions for new trial or to alter or amend a judgment under Rule 59 "cannot be used to raise arguments which could, and should, have been made before the judgment issued."[65] For example, "when a party fails to raise an argument in opposition to a motion

---

[60] Rec. Doc. 196.

[61] Rec. Doc. 218, trial transcript 12/11/2025, at 105:22–106:7 (instructing the jury that deliberate indifference is a required element to prove the episodic-acts-or-omissions claim).

[62] *Cowart*, 837 F.3d at 456 (quoting *Smith*, 461 U.S. at 52).

[63] Rec. Doc. 219-1, pp. 11–13.

[64] Rec. Doc. 225, pp. 19–24.

[65] *Simon*, 891 F.2d at 1159 (quoting *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)).

for summary judgment and instead raises it for the first time in a motion to alter or amend judgment, that argument is waived."[66] DPSC Defendants had multiple opportunities to advance this argument before the instant Motion. For example, this argument could have been raised in DPSC Defendants' two motions to dismiss,[67] their opposition to Plaintiff's motion for partial summary judgment,[68] their proposed jury instructions (within which DPSC Defendants themselves included their own proposed instruction for Plaintiff's individual-capacity conditions-of-confinement claim),[69] or during the jury charge conference between the parties and the Court during which the final jury instructions and verdict form were discussed at length. Further, DPSC Defendants did not file a motion for summary judgment of their own, where they could have argued that conditions-of-confinement claims cannot be lodged against individual-capacity defendants. Accordingly, the Court finds that the argument is waived.[70]

### 5. Responsibility for Parish Jails

Next, DPSC Defendants argue that the entire verdict fails because the sheriff is the sole entity responsible for pretrial detainees housed in local jails.[71] They rely on La. R.S. 15:704, which provides: "Each sheriff shall be the keeper of the public jail of his parish, and shall by all lawful means preserve the peace and apprehend all disturbers thereof, and other public offenders." DPSC Defendants say that this statute forecloses

---

[66] *Gray v. White*, 18 F.4th 463, 469 (5th Cir. 2021) (citing *Indep. Coca-Cola Emps. Union of Lake Charles, No. 1060 v. Coca-Cola Bottling Co. United*, 114 F. App'x 137, 143–44 (5th Cir. 2004) (per curiam)).
[67] Rec. Docs. 30, 147. In ruling on the first motion to dismiss, the Court made note of this issue but declined to examine it further because neither party had raised it. Rec. Doc. 40, p. 22 n.134.
[68] Rec. Doc. 123.
[69] Rec. Doc. 159, pp. 14–16.
[70] The Court also notes that the Fifth Circuit has never expressly stated that a conditions-of-confinement claim cannot be brought against an individual-capacity defendant.
[71] Rec. Doc. 219-1, pp. 13–16.

any potential responsibility for the injuries of a pretrial detainee in a local jail such as Plaintiff, and they request relief under both Rule 50(b) and Rule 59 on this basis.

The Court has twice rejected this argument: once in ruling on Plaintiff's motion for partial summary judgment,[72] and again in ruling on DPSC Defendants' second motion to dismiss.[73] As the Court explained in both rulings:

> The [Fifth Circuit] in *Crittindon [v. LeBlanc]* said that "DPSC is responsible *for the local jails*" that house DPSC prisoners. In other words, when DPSC contracts with local facilities to house sentenced prisoners, DPSC shares a responsibility to ensure the facility is being operated in a way that does not violate the constitutional rights of the inmates. The Court does not find that La. R.S. 15:704 dictates *exclusive* control of a local facility to the Sheriff when the facility also holds DPSC-sentenced prisoners.[74]

Further, after extensive discussion at the charge conference regarding La. R.S. 15:704 and *Crittindon*, the Court instructed the jury as follows:

> Under Louisiana law, the sheriff is the keeper of the public jail of his or her parish. However, when [DPSC] houses Department of Corrections sentenced prisoners in those local jails, the DPSC shares responsibility to ensure that those local jails are being operated in a way that does not violate the Constitution.[75]

Prior to charging the jury, the Court specifically recited this instruction to the parties in the courtroom on the record, and counsel for DPSC Defendants confirmed that they had no objection to it.[76]

The Motion under both Rule 50(b) and Rule 59 on the grounds of La. R.S. 15:704 is denied. As to the request for a JMOL, DPSC Defendants did not raise the argument regarding La. R.S. 15:704 in its Rule 50(a) motion at trial. Because a Rule 50(b) motion

---

[72] Rec. Doc. 138, pp. 4–5.
[73] Rec. Doc. 176, p. 3.
[74] Rec. Doc. 138, pp. 4–5; Rec. Doc. 176, p. 3 (quoting *Crittindon v. LeBlanc*, 37 F.4th 177, 191 (5th Cir. 2022)).
[75] Rec. Doc. 218, trial transcript 12/11/2025, at 102:1–6.
[76] *Id.* at 68:1–14.

is "technically only a renewal of the [Rule 50(a) motion for judgment as a matter of law]," a party cannot use a Rule 50(b) motion to "assert a ground that was not included in the [original] motion."[77] Thus, "[i]f a party fails to raise an issue in its Rule 50(a)(1) motions at trial, it may not do so in its post-trial Rule 50(b) motion."[78] DPSC Defendants moved for a JMOL under Rule 50(a) at trial on four bases: 1) Plaintiff failed to provide sufficient evidence to support his conditions-of-confinement claim; 2) Plaintiff failed to provide sufficient evidence to support his episodic-acts-or-omissions claim; 3) Plaintiff failed to provide sufficient evidence to overcome DPSC Defendants' assertion of qualified immunity; and 4) Plaintiff failed to provide sufficient evidence to support an award of punitive damages.[79] La. R.S. 15:704 was not the subject of DPSC Defendants' Rule 50(a) motion. It is waived for purposes of Rule 50(b).

Aside from the waiver issue, DPSC Defendants fail to meet their burden under Rule 50(b) to show that there was no legally sufficient basis for the jury's verdict. Likewise, as to the request for relief under Rule 59, DPSC Defendants have not established prejudicial or manifest error to warrant a new trial or alteration or amendment of the judgment. For the reasons already explained in the Court's prior rulings,[80] the Court again rejects the argument that La. R.S. 15:704 exempts DPSC Defendants from any responsibility for Plaintiff's injuries in this case.[81] Accordingly, the Motion on this basis is denied under both Rule 50 and Rule 59.

---

[77] *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 290 (5th Cir. 2019) (quoting *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 172 (5th Cir. 1985)).

[78] *Id.* (quoting *Arsement v. Spinnaker Expl. Co.*, 400 F.3d 238, 247 (5th Cir. 2005)).

[79] Rec. Doc. 218, trial transcript 12/11/2025, at 36:21–43:24.

[80] Rec. Doc. 138, pp. 4–5; Rec. Doc. 176, p. 3.

[81] As further support for rejecting DPSC Defendants' argument, the Court previously cited *Murray v. LeBlanc*, No. CV 21-592-JWD-RLB (M.D. La. Jan. 15, 2025), where Judge John deGravelles found that *"Crittindon* couldn't be clearer" on this point. Rec. Doc. 138, p. 5 n.32 (quoting Judge deGravelles' Oral Reasons for denying motions for summary judgment). As the instant Ruling was being finalized, the Fifth

### 6. Qualified Immunity

DPSC Defendants' argument regarding qualified immunity is twofold. First, they contend that the jury was improperly tasked with deciding a pure question of law.[82] Second, they maintain that the evidence and law compel the conclusion that DPSC Defendants are entitled to qualified immunity.[83]

### a. Jury Instruction on Qualified Immunity

DPSC Defendants seek a new trial under Rule 59(a) because "[t]he qualified-immunity instruction improperly submitted a pure question of law to the jury."[84]

At the outset, as Plaintiff notes, DPSC Defendants argued strenuously *in favor* of instructing the jury on qualified immunity leading up to trial. First, they opposed Plaintiff's motion *in limine* wherein *Plaintiff* sought to "exclude or limit any reference to qualified immunity or clearly established law at trial and/or in any instruction or interrogatory to the jury."[85] In opposing that motion, DPSC Defendants urged the Court to craft a jury instruction on qualified immunity using the Fifth Circuit's Pattern Jury Instruction 10.3. The Court did so, modeling the instruction based on the Fifth Circuit's pattern language, and the final product was substantially similar to the qualified-immunity instruction drafted by DPSC Defendants in their proposed jury instructions, to which *Plaintiff* objected.[86]

---

Circuit affirmed Judge deGravelles' interpretation, holding that, "under *Crittindon*, LeBlanc and Smith have at least some authority over [local facilities] that house DPSC's prisoners—even if they also house pretrial detainees." *James Murray et al. v. James LeBlanc et al.*, No. 25-30076, 2026 WL 1961125, at *6 (5th Cir. July 7, 2026). As the Fifth Circuit reasoned, "*Crittindon*'s reasoning does not hinge on whether the plaintiffs there were convicted inmates in DPSC's custody or pretrial detainees," and "logic indicates that if LeBlanc and Smith have some control over the conditions at parish jails that house DPSC's sentenced prisoners, such as whether those facilities track the Jail Guidelines, exercise of that authority (or the decision not to exercise it) could affect conditions for all prisoners, including pretrial detainees." *Id.* at *5. This recent Fifth Circuit decision directly contradicts DPSC Defendants' arguments in this regard.

[82] Rec. Doc. 219-1, pp. 17–18.

[83] *Id.* at pp. 18–21.

[84] *Id.* at p. 17.

[85] Rec. Doc. 154-1.

[86] Rec. Doc. 159, pp. 18–19.

In the current Motion, DPSC Defendants quote the Fifth Circuit in *Ramirez v. Killian*, which stated: "The jury decides the *factual* question of whether the officer violated the plaintiff's rights—the first step of the qualified immunity analysis. It does not decide the purely *legal* question of whether the officer's actions were objectively reasonable in light of clearly established law—the second step."[87] Relying on *Ramirez*, DPSC Defendants argue that the Court's instruction on qualified immunity improperly tasked the jury with deciding the "legal question" of objective reasonableness, which constitutes prejudicial error and warrants a new trial.[88]

DPSC Defendants' position on the instant Motion is a complete reversal of their position on this issue pretrial. Ironically, *Plaintiff* relied on the above-quoted language of *Ramirez* in his motion *in limine* on qualified immunity, and DPSC Defendants argued *against* the application of *Ramirez* in opposing Plaintiff's motion *in limine*.[89] As mentioned, Rule 59 motions "cannot be used to raise arguments which could, and should, have been made before the judgment issued."[90] DPSC Defendants clearly could have made this argument before trial, but instead they advanced the exact opposite—both in their opposition to Plaintiff's motion *in limine*, and in their proposed jury instructions where they requested the Court to provide the very instruction which they now contend constitutes prejudicial error.[91]

---

[87] *Ramirez v. Killian*, 113 F.4th 415, 429 (5th Cir. 2024) (citations omitted).
[88] Rec. Doc. 219-1, pp. 17–18.
[89] Rec. Doc. 154-1, pp. 2–3; Rec. Doc. 168, pp. 2–4.
[90] *Simon*, 891 F.2d at 1159 (quoting *Meyer*, 781 F.2d at 1268).
[91] DPSC Defendants' proposed instruction included the objective reasonableness inquiry: "If, after considering the scope of discretion and responsibility generally given to Department of Public Safety and Corrections officials in performing their duties and after considering all of the circumstances of this case as they would have reasonably appeared to Defendants LeBlanc and Smith at the time of the Plaintiff Young's transfer to Catahoula Correctional Center and housing with other pretrial detainees, you find that Plaintiff Young failed to prove that no reasonable official could have believed that Plaintiff Young's housing with other pretrial detainees was lawful, then Defendants James LeBlanc and Seth Smith are entitled to qualified

On the merits of the issue, the Court agrees with DPSC Defendants' pretrial position. The Court modeled its charge after the Fifth Circuit's pattern instruction on qualified immunity, which is still in effect.[92] The Court acknowledges that the language in *Ramirez* seems to be at odds with the pattern instruction with respect to the jury deciding the second prong of qualified immunity. However, the pattern instruction has yet to be abrogated, and post-*Ramirez* cases support giving the qualified-immunity instruction to the jury in this case. For example, in *Brown v. Burmaster*, the district court for the Eastern District of Louisiana found it appropriate to use the Fifth Circuit pattern qualified-immunity instruction notwithstanding *Ramirez*.[93] The court found that despite "the holding in *Ramirez* and its potential sweeping effects depending on how it is interpreted, the Circuit's recent application of the case does not conform with the [ ] position that the jury has no role to play regarding the reasonableness of [a defendant's] actions in light of clearly established law."[94] The court also discussed *Trabucco v. Rivera*, a post-*Ramirez* Fifth Circuit decision. In *Trabucco*, the Circuit upheld a verdict where the jury found the defendant liable for a constitutional violation but also found that he was entitled to qualified immunity.[95] It described the "clearly established" prong of qualified immunity as "fact-intensive," and it found no error in the jury instructions that "listed broad propositions

---

immunity, and your verdict must be for Defendants LeBlanc and Smith on those claims." Rec. Doc. 159, p. 19.

[92] Fifth Circuit Pattern Jury Instructions (Civil) 10.3; *see Mason v. Faul*, 929 F.3d 762, 764–65 (5th Cir. 2019): "The court's charges on the constitutional issue and qualified immunity separated the two questions and were precisely and almost verbatim stated according to the Fifth Circuit Pattern Jury Instructions (Civil) 10.1 and 10.3. The pattern instructions, in turn, represent an admirable summary, based on Supreme Court and Fifth Circuit precedent, of the elements of a plaintiff's claim that must be proven at trial. We find no error in the court's use of the pattern charges."

[93] *Brown v. Burmaster*, No. CV 22-847, 2025 WL 2481229, at *3–4 (E.D. La. Aug. 28, 2025).

[94] *Id.* at *3. The court cited *Brown v. Burmaster*, No. 22-847, 2025 WL 227785, at *2 (5th Cir. Jan. 17, 2025), where the Fifth Circuit in the same matter stated, in reference to *Ramirez*, that "a reasonable jury could ultimately find that Burmaster 'seized' [Apollo] in violation of clearly established law."

[95] *Trabucco v. Rivera*, 141 F.4th 720, 733 (5th Cir. 2025).

discussing the facts and circumstances suggesting when qualified immunity is and is not appropriate," which the jury used as "guideposts to determine whether [the defendant] was entitled to qualified immunity."[96] The *Trabucco* panel did not mention *Ramirez*.

In the past, the Fifth Circuit has expressly stated that "if the issue [of qualified immunity] is not decided until trial the defense goes to the jury which must then determine the objective legal reasonableness of the officers' conduct."[97] More specifically, where "underlying historical facts" are in dispute that are necessary to resolve questions as to "whether the defendants acted in an objectively reasonable manner," the district court may find itself "unable to make the determination of the objective reasonableness of the officer's activities 'without settling on a coherent view of what happened in the first place,'" in which case qualified immunity may be addressed by the jury.[98] In this case, numerous underlying historical facts bearing on qualified immunity existed, including for example: DPSC Defendants' control of CCC; their knowledge of CCC's operations, including the intermingling of pretrial detainees and sentenced prisoners; whether the risk was obvious based on their knowledge; and whether the intermingling of pretrial detainees with sentenced prisoners was supported by a legitimate governmental objective. Therefore,

---

[96] *Id.* at 730–733.

[97] *McCoy v. Hernandez*, 203 F.3d 371, 376 (5th Cir. 2000) (citing *Snyder v. Trepagnier,* 142 F.3d 791, 799 (5th Cir.1998)).

[98] *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994). *See also Melear v. Spears*, 862 F.2d 1177, 1184 (5th Cir. 1989) ("A district judge may determine that a factual dispute exists that precludes summary judgment, or, as in this case, *a defendant may fail to or choose not to move for summary judgment.* … At this point, then, *the trier of fact must determine the objective legal reasonableness of an officer's conduct by construing the facts in dispute.*") (emphasis added); *Presley v. City of Benbrook,* 4 F.3d 405, 410 (5th Cir.1993) ("if ... there remain disputed issues of material fact relative to immunity, the jury, properly instructed, may decide the question."); *Waganfeald v. Gusman*, 674 F.3d 475, 483–84 (5th Cir. 2012)).

the Court finds that the use of Fifth Circuit Pattern Instruction 10.3 on qualified immunity was not prejudicial error, and the Motion for a new trial in this respect will be denied.[99]

### b. Qualified Immunity on the Merits

To overcome qualified immunity, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[100] DPSC Defendants argue that Plaintiff failed to establish his Fourteenth Amendment claim under both the conditions-of-confinement and episodic-acts-or-omissions theories.

A conditions-of-confinement claim "is a constitutional attack on general conditions, practices, rules, or restrictions of pretrial confinement."[101] "A condition of confinement is 'usually the manifestation of an explicit policy or restriction,' although a condition may also reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [officials], to prove an intended condition or practice.'"[102] In a conditions-of-confinement claim, "a constitutional violation exists only if [it is found] that the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective."[103] The Due Process Clause of the Fourteenth Amendment proscribes the punishment of pretrial detainees.[104] According to the Fifth Circuit, in pretrial confinement

---

[99] *See also, e.g.*, *Matthews v. LeBlanc*, No. CV 17-8800, 2018 WL 2198508 (E.D. La. May 14, 2018) (emphatically denying a challenge to qualified-immunity instruction); *Hill v. Kilbourne*, No. CIV.A. 11-778-JWD, 2015 WL 1143074, at *3 (M.D. La. Mar. 13, 2015) (same).

[100] *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[101] *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997) (quoting *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644 (5th Cir. 1996)).

[102] *Zavala v. City of Baton Rouge/Par. of E. Baton Rouge*, No. CV 17-656-JWD-EWD, 2018 WL 4517461, at *9 (M.D. La. Sep. 20, 2018) (citing *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009)).

[103] *Scott*, 114 F.3d at 53 (citing *Bell v. Wolfish,* 441 U.S. 520, 539 (1979)).

[104] *Hare*, 74 F.3d at 639 (citing *Bell*, 441 U.S. at 535).

cases, "[a] showing of express intent to punish is not required. Instead, such intent may be presumed where a policy is otherwise senseless."[105] With particular relevance to this case, the Fifth Circuit has held that "[t]he confinement of pretrial detainees indiscriminately with convicted persons is unconstitutional unless such practice is reasonably related to the institution's interest in maintaining jail security … or physical facilities do not permit their separation."[106]

The episodic-acts-or-omissions framework applies "where the complained-of harm is a particular act or omission of one or more officials[.]"[107] Relevant here, "[a] supervisory official may be held liable ... only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury."[108] For purposes of imposing liability on a defendant in his individual capacity, a pretrial detainee must establish that the defendant acted with subjective deliberate indifference.[109] A person acts with deliberate indifference if "(1) he knows that an inmate faces a substantial risk of serious bodily harm; and (2) he disregards that risk by failing to take reasonable measures to abate it."[110] Further, "[a] failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights."[111]

With respect to the conditions-of-confinement claim, in their Rule 50(a) motion at trial, DPSC Defendants argued that "Plaintiff has shown no evidence that any general

---

[105] *Shepherd*, 591 F.3d at 454 (citing *Bell*, 441 U.S. at 539).
[106] *Jones v. Diamond*, 636 F.2d 1364, 1374 (5th Cir. 1981).
[107] *Scott*, 114 F.3d at 53 (internal quotation marks omitted).
[108] *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)).
[109] *Id.*
[110] *Anderson v. Dallas Cty., Tex.*, 286 F. App'x. 850, 860 (5th Cir. 2008) (citing *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006)).
[111] *Porter*, 659 F.3d at 446 (quoting *Rhyne v. Henderson Cnty.,* 973 F.2d 386, 392 (5th Cir.1992)).

conditions, practices, rules or restrictions of pretrial confinement which amounted to punishment occurred."[112] They asserted the following points:

- There was no evidence that Plaintiff's main attacker, DPSC-sentenced prisoner Earldarrius Brooks ("Brooks"), had a history of violence at the time he was housed with Plaintiff.[113]

- Plaintiff had no prior dealings with Brooks, and the person who instigated the fight was a pretrial detainee named Zachary Northrup.[114]

- DPSC Defendants provided CCC with Basic Jail Guidelines ("Guidelines") which direct the operation of local facilities. CCC failed to follow the Guidelines, and Plaintiff failed to meet his burden to prove that DPSC Defendants were responsible for the alleged unconstitutional conditions of confinement.[115]

As to the episodic-acts-or-omissions claim, DPSC Defendants argued generally in their Rule 50(a) motion that there was no evidence of deliberate indifference, and that personal involvement sufficient to support supervisory liability was not proven.[116]

The Court denied the Rule 50(a) motion as to both claims, finding that a reasonable jury could conclude the following based on the evidence produced during trial:

- CCC was overpopulated and severely understaffed, in violation of the Guidelines.[117]

- Criminal history checks were not conducted, in violation of the Guidelines.[118]

---

[112] Rec. Doc. 218, trial transcript 12/11/2025, at 37:5–7.
[113] *Id.* at 37:13–17.
[114] *Id.* at 37:18–23.
[115] *Id.* at 37:24–38:7.
[116] *Id.* at 38:8–16.
[117] *Id.* at 40:13–44:1.
[118] *Id.* at 41:2–9.

- There was no classification system in place at CCC, and inmates were simply housed wherever there was an open bed without sufficient consideration of their characteristics, in violation of the Guidelines.[119]

- The Guidelines apply to local facilities such as CCC, and DPSC Defendants had an obligation to monitor and ensure compliance with the Guidelines.[120]

Based on the evidence presented, the Court concluded that a reasonable jury could find that DPSC Defendants knew of the problems and failed to take adequate action.[121]

On the Rule 50(b) Motion, viewing the evidence in the light most favorable to Plaintiff, the Court finds that a reasonable jury could have found that DPSC Defendants violated Plaintiff's rights under both the conditions-of-confinement theory and the episodic-acts-or-omissions theory. Under *Jones v. Diamond*, indiscriminate intermingling of pretrial detainees and convicted prisoners "is unconstitutional unless such practice is reasonably related to the institution's interest in maintaining jail security … or physical facilities do not permit their separation."[122] There was sufficient evidence for the jury to reasonably conclude that CCC lacked an adequate classification system, and that inmates were given housing assignments simply based on bed availability despite Guidelines requiring classification procedures and specialists.[123] In the instant Motion, DPSC Defendants focus on CCC's failures and argue that CCC, not DPSC Defendants, were responsible for the conditions which led to Plaintiff's attack. However, there was also

---

[119] *Id.* at 41:10–16.
[120] *Id.* at 41:17–24.
[121] *Id.* at 41:25–42:11.
[122] *Jones*, 636 F.2d at 1374.
[123] Rec. Doc. 217, trial transcript 12/10, at 67:14–69:23, 99:22–101:14; Pla. Exh. 14.

sufficient evidence for the jury to reasonably conclude that DPSC Defendants were personally involved in the failures at CCC, including:

- DPSC Defendants are responsible for requiring local facility compliance with the Guidelines in order to continue housing its sentenced prisoners in such facilities, including Guidelines that require housing assignments at local facilities to be based on characteristics such as legal status and custody needs.[124]

- The DPSC conducts audits of local facilities such as CCC for compliance with the Guidelines. The audits of local facilities are significantly less rigorous than audits of state-run facilities.[125]

- Frequent incidents of inmate violence at CCC were reported to DPSC, including between pretrial detainees and sentences prisoners.[126]

- Despite their involvement with holding sentenced prisoners at local facilities and knowledge of the problems at CCC, DPSC Defendants were indifferent to the dangers presented by the conditions at CCC and continued to send its prisoners there without taking reasonable corrective action.[127]

The evidence construed in the light most favorable to Plaintiff provided the jury with a reasonable basis to support its finding of liability against DPSC Defendants. The jury also had a legally sufficient evidentiary basis to conclude that DPSC Defendants'

---

[124] Rec. Doc. 216, trial transcript 12/9, at 54:21–55:6, 101:8–12; Rec. Doc. 217, trial transcript 12/10, at 230:4–231:15.

[125] Rec. Doc. 216, trial transcript 12/9, at 76:6–22, 87:6–91:25, 93:5–21, 99:19–100:15, 153:5–10, 159:6–166:15, 189:13–190:4; Rec. Doc. 217, trial transcript 12/10, at 53:14–54:14, 106:25–110:17, 232:3–236:24.

[126] Rec. Doc. 216, trial transcript 12/9, at 188:3–189:12, 233:22–237:19; Rec. Doc. 217, trial transcript 12/10, at 37:5–42:1, 65:23–67:13, 146:3–148:15, 237:2–240:23; Rec. Doc. 218, trial transcript 12/11/2025, at 4:24–8:3; Pla. Exh. 4(a, b, c); Pla. Exh. 6; Pla. Exh. 23; Pla. Exh. 24; Pla. Exh. 25; Pla. Exh. 28; Pla. Exh. 29.

[127] Rec. Doc. 216, trial transcript 12/9, at 194:20–195:15; Rec. Doc. 217, trial transcript 12/10, at 120:19–122:10, 225:11–24.

conduct was objectively unreasonable in light of clearly established law—namely, that it is unconstitutional to indiscriminately house pretrial detainees with sentenced prisoners unless reasonably related to jail security or necessitated by physical facilities.[128] Therefore, the Court denies the Rule 50(b) motion with respect to qualified immunity. For the same reasons, the Court finds that the jury's denial of qualified immunity was not against the weight of the evidence or based on manifest error, and the Court denies the request for Rule 59 relief on this basis.

## III.    CONCLUSION

For the foregoing reasons, DPSC Defendants' Motion for post-trial relief under Rule 50(b), Rule 59(a), and Rule 59(e)[129] is DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this ___ day of _____, 2026.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[128] *Jones*, 636 F.2d at 1374.
[129] Rec. Doc. 206.